# Richmond

## Vernard F. Bond v. Eugene A. Green and Merle B. Green.

March 7, 1949.

Record No. 3442.

Present, All the Justices.

The opinion states the case.

*Henry P. Thomas* and *John W. Waller*, for the appellant.

*Charles Pickett*, for the appellees.

HUDGINS, C. J., delivered the opinion of the court.

In 1942, Vernard F. Bond acquired 4.68 acres of land, designated as Lot No. 9 of a subdivision lying in Fairfax county, known as "Cameron Villa Farms." In 1925, a plat of this subdivision was made and recorded, whereby approximately 40 acres of an old farm known as the "Javins Tract," was subdivided into thirteen lots. Six of these lots, including Lot No. 9 sold to Bond, had a combined eastern frontage of 1682½ feet on the "Triplett Road," and an equal western frontage on a new road extending north and south through the subdivision and parallel to the Triplett road. In 1947, Bond divided his Lot No. 9 into eight lots, four fronting east on the Triplett road and four fronting west on the new road. A plat of this subdivision, designated "Resubdivision of Part of Cameron Villa Farms," was approved by the proper authorities of Fairfax county, and duly recorded.

Bond was using the Triplett road for the purpose of hauling building materials to several houses which he had under construction on his lots fronting on this road, when Eugene A. and Merle B. Green obtained a permanent injunction "forever" enjoining and restraining "Vernard F. Bond, his servants, agents, employees, assignees, alienees and successors in title * * * from going upon that certain outlet road situated in Mount Vernon District, Fairfax County, Virginia, known as the Chase or Triplett outlet road, either in person

or by the use of vehicles, machinery or otherwise." From this decree Bond obtained this appeal.

The only question presented is whether the Chase or Triplett road is a private or a public way.

The established facts are that, in 1857, one J. Edward Chase owned a farm situated in Fairfax county, adjacent to and south of a farm owned by F. F. Triplett. Thompson Javins owned a farm just north of Triplett and between his land and the Rolling road, a county road extending east and west between Alexandria and Fairfax courthouse. Chase, at the October term, 1857, made application to the county court of Fairfax to establish a road across the Triplett and Javins lands to the Rolling road. On this application the following order was entered:

"On the motion of J. Edward Chase. Ordered that one of Commissioners of Roads for this County do view a way for a road from the lands of said Chase through the lands of F. F. Triplett and Thompson Javins to the Rolling Road, and that he report to the Court the convenience and inconvenience that will result as well to the public as to individuals if said road shall be established as proposed, and especially whether any yard, garden, orchard or any part thereof will in such case be taken."

Pursuant to this order one of the Commissioners of Roads made the following report:

"In obedience of the order of the County Court of Fairfax county at its October Term, I have viewed the route for a road for J. Edward Chase, through the lands of F. F. Triplett and Thompson Javins, the road as shown by Chase papers through Triplett's land on the edge of his yard and on the line of T. Javins and John H. Broders, on Javins' side of the land to the R. Road and taking from Triplett about one and one half acres of land for which I assess the damages at fifty dollars—and about one and a quarter acres from Javins, for which I assess at twenty five dollars."

The application or petition for the establishment of the road, if in writing, was not found in the clerk's office of

Fairfax county. However, there is attached to the report a rough sketch designating the road with its southern terminus on the lands of F. F. Triplett, and its northern terminus in Rolling road.

At the May term, 1858, this report was approved and the road established, as appears from the following order:

"In the matter of the application of J. Edward Chase for a road—

"The Court having considered the report, doth hereby establish the road according to the report of the Commissioner and the endorsements thereon by Thompson Javins & F. F. Triplett, & order that the width of said road shall be reduced to twenty feet. And that forty dollars be assessed upon the County for said Thompson Javins as his damages (the said F. F. Triplett waiving all claim to damages) and that the costs of this proceeding be levied upon the County."

Subsequently, another order was entered on the same subject-matter:

"F. F. Triplett is appointed Surveyor of the precinct of roads established on the application of J. Edward Chase & the following persons assigned to work thereon, to-wit: F. F. Triplett, J. Edward Chase, Uriah Dove, & Charles Quander."

The foregoing excerpts from the minutes of the county court of Fairfax reveal that every step required by pertinent statutes (Code 1849, Ch. 52), to establish a public road was taken. The court exercised the discretion given it by section 5 of this chapter (see Code of 1873, chap. 52, sec. 22), which provides "Every road shall be thirty feet wide, unless the court order it to be less," and reduced the width from thirty to twenty feet.

The county court was empowered to condemn private property for public use. Acting on this authority, it seized the lands of Triplett and Javins, determined and assessed the amount of damages sustained by them, and on the waiver by Triplett of any damage to him, ordered the damages to Javins to be paid out of public funds. No court

has power to condemn private property for private use. The mere fact that damages for the seizure of the Javins land was ordered paid out of county funds is conclusive proof that the court intended to, and did, establish the route in question as a public road.

The record chain of title of neither appellant nor appellees was traced to the respective owners of the land in 1857 and 1858. However, oral testimony was introduced, without objection, tending to prove that the 4.64 acres fronting on the Triplett road, now owned by appellant, was a part of the land formerly owned by Thompson Javins, and that the 1.64 acres of land, now owned by appellees, was a part of the land formerly owned by F. F. Triplett.' It is clear from the evidence that so much of the present location of the Chase or Triplett road extending approximately 1682 feet northward from the Triplett land across the old Javins land to the county road is the identical location of the route established in 1858, and that the main public highway formerly called the Rolling road, is now designated as the Franconia road.

Appellees contend that the road in question is a private way, because (1) it was conveyed to them by deed as such, and (2) that the road was abandoned as a public way.

Appellees acquired the 1.64 acres of land upon which they reside by deed from Nannie M. and A. E. Francis, bearing date June 20, 1944. This deed purports to convey to the grantees the right to use the Chase or Triplett road, in the following language:

"Together with a right of way over the Chase outlet road; together with the Triplett heirs and purchasers only, the said road being a private road to be used solely by Triplett and Chase purchasers and their assignees."

No other record evidence was introduced tending to show how or in what manner Nannie M. and Albert E. Francis acquired a right to convey an interest in the Chase or Triplett road.

One of the exhibits filed is a deed bearing date July 19, 1943, from Albert E. Francis and Nannie M. Francis to

the Virginia Realty Company, Inc. This deed purports to convey to the grantee the right to use the Triplett road in the following language:

"There is conveyed as appurtenant to the above tract of land a right of way from this same to the County road, which right of way was ordered to be surveyed by the County Court of Fairfax County at its October term 1867, and the report of Commissioner confirmed by this order entered May term 1868, across the land of Triplett and Javins from what was then the Chase property to the Rolling road of a width of 20 feet; this road has been in constant use as an appurtenance to the above tract of land from that time to the present, and particularly within the knowledge of the grantors hereof same has been used without interference or interruption for a period in excess of 22 years."

In the absence of evidence tending to show that any orders were entered by the county court in 1867 and 1868 concerning the Triplett road, we infer that the scrivener of the foregoing deed intended to refer to the orders of the county court entered at the October term, 1857 and not 1867, and at the May term 1858 and not 1868. However, the only copies of orders of the county court introduced in evidence are the ones entered in 1857 and 1858, which, as already stated, clearly established a public road, and not a private road appurtenant to the Chase and Triplett lands.

The evidence fails to show that Nannie M. and Albert E. Francis acquired any right in this road other than the right to use it jointly with the public at large. Having acquired no such right they could convey none to appellees.

The circumstances relied upon by appellees to show an abandonment or loss of the right of the public to use the Chase or Triplett road are (1) that the road for a great many years had been maintained by private capital and not by expenditure of public funds; and (2) the road was not included in the Highway System when the supervision of county roads was transferred to the Highway Commission.

The ancient maxim of the common law that "once a highway always a highway," unless it is abandoned or

vacated in due course of law,[1] applies to the facts in this case.

"Vacation" is a term ordinarily employed to describe the termination of the existence of a highway by direct action of the public authorities, as distinguished from the loss or abandonment of the public right by nonuser. 25 Am. Jur., Highways, sec. 117. This technical distinction between "vacation" and "abandonment," is not always observed in drafting statutes dealing with highways. In Chapter 271 of the Acts of 1940, p. 435, amending the Acts of 1932, Chap. 415, transferring the county roads to the Highway Commission, it is provided:

"The jurisdiction and procedure for abandonment of roads in the secondary system of state highways shall remain in the local road authorities as now provided by law." No proceeding prescribed by statute to discontinue, vacate or "abandon" the Triplett road appears to have been instituted. There remains for our consideration the sole question of abandonment by non-user.

Appellees do not contend that the Triplett road was ever closed. On the contrary, they contend that it has been open and used continuously since 1858, originally as a public road, and on some indefinite date, subsequent to that year it was abandoned by the public and reverted to private parties, and thereafter it was used exclusively by the families living on different parts of the old Triplett farm, who maintained it at their own expense.

The evidence is very indefinite as to when, if at all, the county ceased to maintain the road. "In 1940 and possibly 1931," the highway authorities caused the road to be cleared of snow several times. For a great many years no other work seems to have been done on the road by the highway authorities. People living south of the Chase and Triplett farms had an outlet to a main highway to the south of them; hence few people other than families living on the Chase and Triplett farms and their business and social friends, had occasion to use this road. There is evidence to the

---

[1] *Basic City v. Bell*, 114 Va. 157, 76 S. E. 336, Ann. Cas. 1914A, 1031.

effect that it was used now and then by the public at large, and was regarded by many as a public way.

While the plat of the subdivision of Cameron Villa Farms indicating that its eastern boundary is the Triplett road, is not conclusive upon the rights of appellees, it is evidence tending to prove that in 1925 the road was open to the public.

Appellees contend that proof of the fact that the road was maintained for a number of years by private parties and not by the public, establishes an abandonment of the road as a public way. While we do not agree with this contention of appellees, yet if we assume that the Triplett road was abandoned, the vital question to be determined would be to whom did the title to the land embraced in that part of the Triplett road which extends across the Javins tract revert?

The general rule is that on the condemnation or dedication of land for use as a public highway, the public acquires only an easement in the land condemned or dedicated. The fee remains in the owner subject to the right of passage. *Bolling* v. *Petersburg*, 3 Rand. (24 Va.) 563; *Nusbaum* v. *Norfolk*, 151 Va. 801, 145 S. E. 257; 39 C. J. S. Sec. 136.

When a highway is discontinued or abandoned, the land used for that purpose immediately becomes discharged of the servitude and the absolute title and right of exclusive possession thereto reverts to the owner of the fee, without further action by the public or highway authorities. In the absence of evidence to the contrary, the fee is presumed to be in the abutting land owners. If the highway is the boundary line between different tracts, the presumption is that the reversion to each owner is to the center of the highway. *Talbot* v. *Massachusetts Mut. Life Ins. Co.*, 177 Va. 443, 14 S. E. (2d) 335; *Richmond* v. *Thompson*, 116 Va. 178, 81 S. E. 105.

Appellees contend that the general rule does not apply in this case because they claim that the heirs of F. F. Triplett and the assignees of J. Edward Chase jointly acquired the 1¼ acres included in the Triplett road across

the Thompson Javins tract. The only evidence on this point is the testimony of Albert E. Francis, one of the grantors of appellees, who stated that one of the Tripletts— "Mrs. Lillian," told him—

"* * * that Mr. Chase bought an acre and a quarter from Javins to reach out to the main road. That is what they told me and I know they told it to me. * * *

"Q. Did they ever tell you anything about whether or not it was a public road?

"A. They never did. But Mrs. Lillian said back in those early days she thought then it was.

"Q. And then what happened.

"A. It reverted, turned back to the owners of the land because Mr. Triplett and Mr. Javins sold that land to Mr. Chase. Mr. Frank Triplett, Miss Kate's father, and Mr. Javins sold this land to Mr. Chase because he had no way to get out.

"Q. Sold him this right-of-way?

"A. Yes, there was a provision made with the Tripletts that they could use it jointly with Mr. Chase. But there was no provision made with Javins because he didn't need it."

No documentary evidence or other testimony was introduced to corroborate these statements. They are in direct conflict with the formal orders of the county court of Fairfax, which show that neither Mr. Triplett nor Mr. Chase bought the right of way from Javins, but that it was condemned by the county for public use, and compensation therefor paid out of public funds. These orders and the report of the Commissioner of Roads clearly show that the land included in so much of the Triplett road as is now in controversy, was taken wholly from the land then owned by Thompson Javins. Under these circumstances, even if the proof were sufficient to show that the road was abandoned, title would revert to the present abutting owners of the Thompson Javins tract and not to the successors in title to the F. F. Triplett or J. Edward Chase tracts of land.

■ The statute (Chapter 415 of the Acts of 1932, Michie's 1942 Code, sec. 1975 ii, Acts of 1942, Chapter 266), transfers to the Highway Commission the same power and authority over county roads that had theretofore been vested in the boards of supervisors of the respective counties. Another section of the Act (Michie's 1942 Code, sec. 1975 ll directs the Highway Commission to cause to be made and filed maps of all public roads in the respective counties. The fact that such maps do not include a county road does not alone establish a discontinuance or abandonment of such road as a public highway.

■ The evidence in this record convinces us (1) that the Triplett road was opened and established as a public highway; (2) that so much of the Triplett road as is in controversy in this case was not vacated, discontinued or abandoned as a public highway.

The injunction will be dissolved, the decree reversed, and the suit dismissed from the docket.

*Reversed and final decree.*