### Staunton

HARRY J. MOODY AND LORRAINE B. MOODY v. AUBREY L. LINDSEY.

September 2, 1960.

Record No. 5111.

Present, All the Justices.

The opinion states the case.

*Richard L. Jones* and *Chas. Edgar Gilliam,* for the appellants.

*D. W. Murphey* and *Frederick T. Gray* (*Williams, Mullen, Pollard & Rogers,* on brief), for the appellee.

EGGLESTON, C. J., delivered the opinion of the court.

Harry J. Moody and Lorraine B. Moody, sometimes hereinafter referred to as the plaintiffs, filed in the court below a motion for a declaratory judgment against Aubrey L. Lindsey, sometimes hereinafter referred to as the defendant, seeking an adjudication that "Old Hundred Road" leading from the land of the plaintiffs to State Highway No. 10, and running through the land of the defendant, in Chesterfield county, is "a public road," that as members of the public they, the plaintiffs, have the right to travel over it, and that as owners of property abutting on the road they have a "private easement of right of way over" it. The plaintiffs further prayed that the defendant be perpetually enjoined from blocking their passage over the road. The defendant answered, denying that "Old Hundred Road" is a public road and alleging that the section of the road described in the motion "has been abandoned by action of the Board of Supervisors of Chesterfield county in the manner required by law." He also denied that the plaintiffs had a private easement of right of way over the road.

After hearing the evidence ore tenus the lower court, in a written opinion, expressed "some doubt" as to whether the board of supervisors had "effectively and legally closed and vacated said road." However, it held that "there is no doubt that the said road has been abandoned and discontinued for a period of nearly 50 years," and

that accordingly it was no longer a public highway. The court further held that the plaintiffs' claim to a private easement of passage over the defendant's land was barred by laches. It entered a final decree dismissing the motion and petition for injunction and from that decree the plaintiffs have appealed.

The plaintiffs' contentions on appeal may be summarized thus: (1) The evidence fails to show that Old Hundred Road was vacated in the manner provided by law or abandoned by nonuser; that it is still a public road which the plaintiffs are entitled to use as a means of access between their property and State Highway No. 10; (2) The recitals in the deeds in the defendant's chain of title show that the plaintiffs are entitled to an easement of passage along that portion of the road which runs through the defendant's property; (3) In any event, the plaintiffs are entitled to an easement by necessity over the portion of the road which runs from their land across the land of the defendant.

The underlying facts, which are undisputed, and the respective contentions of the parties may best be related by reference to the attached diagram used in the briefs and the oral argument.

It will be observed that Hundred Road runs a distance of about 300 feet in a northwesterly direction from its intersection with Highway No. 10 to the "Brickyard crossing" over the Atlantic Coast Line Railroad right of way. The deed by which the Moodys acquired their property recites that it lies "to the North of the centerline of Old Hundred Road." Lindsey owns three parcels of land which are here involved. Lindsey Parcel No. 2 lies south of Old Hundred Road and immediately across the road from the Moody tract. Lindsey Parcel No. 3 is an irregular shaped tract lying between Highways Nos. 10 and 1515 and fronting 26.9 feet along the southern line of the Moody property. This Lindsey parcel was formerly a part of the right of way of the Richmond & Petersburg Electric Company, subject to the easement of Old Hundred Road which crossed it. Lindsey Parcel No. 1 is a triangular piece of land lying southeast of Parcel No. 3 and located at the northwestern intersection of Highways Nos. 10 and 144.

According to the stipulation of facts, the property to the north and east of the Moody property, marked "Private Property" on the diagram, "does not afford any means of ingress or egress to the Moody property." Thus the Moodys have no way of reaching a public road from their property other than along Old Hundred Road and its

4

projection across Lindsey Parcel No. 3, marked "dirt entrance" on the diagram. In 1957 Lindsey erected a billboard across this dirt entrance and this precipitated the present litigation.

The stipulation shows that "about 1913" [1] the "Brickyard crossing"

[1] The minutes of the Board of Supervisors of Chesterfield county, admitted in evidence, show that this action was taken at the July and August, 1911, meetings.

where Old Hundred Road crossed the tracks of the Atlantic Coast Line Railroad "was abandoned" "in accordance with then existing statutes," and the roadway "was altered" so as to cross the railroad a short distance south of the former crossing. Copies of the minutes of the meeting of the Board of Supervisors of Chesterfield county, offered in evidence, show that the board adopted the report of certain viewers that "it is necessary to close the Old Hundred Road *where it crosses the Atlantic Coast Line Railroad, and to the extent that it lies on the right of way of that railroad*" (emphasis added), and that a new crossing be established by a bridge to be erected at the cost of the railroad company over its tracks.

It is stipulated that, "No one has lived on the Moody property since 1913 and no witness could recall" that Hundred Road, between the railroad tracks and Lindsey Parcel No. 3, had been used since that date. That portion of Hundred Road between the "Brickyard crossing" and the northern end of the "dirt entrance" is covered with trees, undergrowth and vegetation, but the "dirt entrance" leading across Lindsay Parcel No. 3 is cleared.

The main question presented is whether that portion of Hundred Road leading across Lindsey Parcel No. 3 has been vacated or discontinued in the manner provided by statute, or abandoned by nonuser.

In *Bond* v. *Green*, 189 Va. 23, 30, 31, 52 S. E. 2d 169, 172, we pointed out that the ancient maxim of the common law, "Once a highway, always a highway," obtains in this jurisdiction unless and until it has been "vacated" in the manner prescribed by statute or "abandoned" by nonuser.

Sections 2 and 3 of the Act of 1904, ch. 106, p. 191, as amended by Act of 1908, ch. 280, p. 408 (Pollard's Code of 1904, § 944a, as amended), were in effect at the time of the closing of the "Brickyard crossing." These sections provided the method of "altering the location" of a county road and "establishing" a new road. Section 9 of the Act provided that "When any road is altered, it shall be *discontinued to the extent of such alteration and no further.*" (Emphasis added.) This latter section also provided the method in which a "county road" might be "discontinued."

It is clear from the minutes of the board of supervisors that that body intended merely to close that portion of Hundred Road where it crossed the railroad tracks, and to establish an overhead crossing a short distance to the south. But there is no indication of any intent

on the part of the board to discontinue that portion of the road leading from the right of way of the railroad company past the Moody property and through Lindsey Parcel No. 3. Hence, under the express terms of Section 9 of the Act of 1904, *supra*, the effect of the proceeding was to close the crossing and discontinue the road "to the extent of such alteration and no further."

We come, then, to consider whether there has been a showing that that portion of the road running through Lindsey Parcel No. 3 and along the "dirt entrance" has been abandoned by nonuser. It is well settled that the burden of proof of abandonment of an established highway is upon the party asserting it. *Town of Basic City v. Bell*, 114 Va. 157, 165, 76 S. E. 336, Ann. Cas. 1914A 1031; 17 Mich. Jur., Streets and Highways, § 168, p. 684; 39 C. J. S. Highways, § 130, p. 1066. As is said in Elliott on Roads and Streets, 4th Ed., Vol. 2, § 1173, p. 1669, "In the absence of satisfactory evidence of discontinuance, vacation or abandonment, the presumption is in favor of the continuance of the highway with the principal and incidental rights attached to it. Not only is this so by force of the maxim we have quoted ['once a highway always a highway'], but it is so by force of the elementary rule that 'a thing shown to exist is presumed to continue until the contrary is made to appear.'" To effect an abandonment there must be an intention to abandon. 39 C. J. S., Highways, § 130, p. 1066.

It is generally held that nonuser will not operate to discontinue a legally established highway, unless coupled with affirmative evidence of an intent to abandon. Especially is this so where there is no use of the premises adverse to the right in the public. 39 C. J. S., Highways, § 131, p. 1066; Elliott on Roads and Streets, 4th Ed., Vol. 2, § 1174, p. 1670; 25 Am. Jur., Highways, § 112, pp. 410, 411. See also, *Town of Basic City v. Bell, supra*, 114 Va., at page 167; *Sipe v. Alley*, 117 Va. 819, 824, 86 S. E. 122.

In the present case there is proof merely of nonuser since 1913 of the portion of the road in controversy. There is no evidence of an intent on the part of the authorities to abandon that portion of the road. On the contrary, as has been said, the recorded intention of the board of supervisors was to close the road "where it crosses" the railroad tracks and leave open and unaffected the remaining portion.

Moreover, the plat attached to the deed by which Lindsey acquired title to Parcel No. 3 from the State Highway Commissioner, in 1949, shows the "dirt entrance" leading across the property to Highway

No. 10. This negatives an intent on the part of the public authorities to abandon the entrance as a means of access to the highway.

In the absence of statute, mere failure of the public authorities to keep a road in repair, like mere nonuser, does not constitute an abandonment. 39 C. J. S., Highways, § 132, p. 1069; 25 Am. Jur., Highways, § 113, p. 412; Elliott on Roads and Streets, 4th Ed., Vol. 2, § 1174, p. 1671; *Sipe* v. *Alley, supra*, 117 Va., at page 824.

It follows from what has been said that the lower court erred in holding that the portion of Old Hundred Road which runs through Lindsey Parcel No. 3 has been abandoned and discontinued as a public highway. On the contrary, it should have adjudicated that that portion of the road is still a public highway, that the plaintiffs are entitled to use it as such, and that the defendant had no right to obstruct it.

Having reached this conclusion it is unnecessary that we discuss the other questions raised in the briefs.

The decree appealed from is reversed and the cause remanded with direction that a proper decree be entered in conformity with this opinion.

*Reversed and remanded.*