# Richmond

## Edward C. Ord, Et Al. v. Douglas B. Fugate, State Highway Commissioner.

January 16, 1967.

Record No. 6321.

Present, All the Justices.

*John J. Brandt (Charles H. Duff; Duff & Slenker*, on brief), for the plaintiffs in error.

*Kelly E. Miller, Assistant Attorney General (Robert Y. Button, Attorney General; Paul D. Stotts, Assistant Attorney General,* on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Edward C. Ord, David Ord Alexander, and Bernard H. Kelley, the plaintiffs, filed a motion for declaratory judgment against Douglas B. Fugate, State Highway Commissioner of Virginia, the defendant. The motion alleged that the plaintiffs were the fee simple owners of certain parcels of land in Loudoun County, Virginia, bordering upon State Route 740, which road constituted the sole means of access from the plaintiffs' property to Route 619, the main highway.

The motion further alleged that Route 740 was in an "untravelable state and condition" and that the plaintiffs were "thus deprived of the appropriate and normal enjoyment" of their property.

It was also alleged that the defendant had acknowledged responsibility for the supervision, repair, and maintenance of the road and had acknowledged that it was untravelable but had refused to make repairs thereto.

The motion prayed for a "binding declaration of rights . . . that the plaintiffs are entitled to have said State Route 740 forthwith placed in a travelable condition" from their property to the main highway.

The defendant filed a motion to dismiss, asserting that the road was not under his control and jurisdiction since it had been discontinued at the request of the Board of Supervisors of Loudoun County pursuant to Code, § 33-76.7, the statute relating to the discontinuance of roads in the state secondary system of highways.

The plaintiffs filed a reply to the motion to dismiss, asserting that the alleged discontinuance of the road was a nullity because the defendant did not give them notice and did not hold a hearing as required by Code, § 33-76.7.

The trial court heard evidence and argument of counsel and granted the defendant's motion to dismiss. A final order was entered embodying the court's action, and the plaintiffs were granted this writ of error.

The record discloses that on August 18, 1964, the Board of Supervisors of Loudoun County, at a regular meeting, adopted a resolution requesting the State Highway Commission to discontinue portions of seven secondary highways in the county, including 0.85 miles of Route 740, the road here in question, from its intersection with Route 619 to "Dead End." The resolution stated that the portions of the routes included therein "appear to serve no public necessity."

On September 17, 1964, the State Highway Commission adopted a resolution discontinuing, "as parts of the Secondary System of Highways," the portions of the roads included in the request of the Board of Supervisors of Loudoun County.

The plaintiffs first contend that the discontinuance of Route 740 was void because they were provided no notice or hearing with respect thereto. The plaintiffs say that such notice and hearing were required by Code, § 33-76.7. That Code section reads as follows:

"§ 33-76.7. *Discontinuance of road or railway crossing as part of secondary system.*—[1] On petition of the governing body of any county in which a road or crossing is located or upon petition of the town council of a town having a population of thirty-five hundred or less, or on its own motion the Commission may discontinue any road or crossing in the secondary system as a part thereof in any case in which the Commission deems such road or crossing not required for public convenience. [2] If the Commission on its own motion desires to discontinue any such road or crossing, notice shall be given the governing body of the county and town at least thirty days prior to any discontinuance of a road or crossing under this section. [3] If the governing body of any county or town requests the same the Commission, or a representative thereof, shall hold a hearing in the county in which the road or crossing is located in order to ascertain whether or not such road or crossing should be discontinued. [4] From the finding of the Commission an appeal shall lie to the circuit court of the county in which such road or crossing is located and the procedure thereon shall conform to the procedure prescribed in § 33-76.4. [5] The jurisdiction and procedure for abandonment of roads discontinued as parts of the secondary system in accordance with this article shall remain in the local road authorities."

The plaintiffs offer us no support for their proposition that by the terms of the statute they were entitled to notice of the proposed

discontinuance. An analysis of the statute makes it painfully obvious why they are unable to support their claim.

It will readily be seen from the statute that the legislature has provided two methods for the initiation of proceedings to discontinue a secondary road. Such action may be initiated upon motion of the State Highway Commission itself or upon petition of the governing body of a county or of a town having a population of thirty-five hundred or less.

The only requirement in the statute for notice arises when the proposed discontinuance is upon the Commission's own motion; but, even then, the only intended recipient of such notice is the local governing body involved. Search as one might, no requirement can be found in the statute for notice to supposedly interested land-owners.

The plaintiffs submit but flimsy support for their contention that by the terms of the statute they were entitled to a hearing. They urge us to read the statute so that the words "requests the same," appearing in the third sentence thereof, would be referred to the word "discontinuance," appearing in the second sentence, rather than to the words "a hearing," appearing later in the third sentence. The plaintiffs then say that the third sentence should be read, "If the governing body of any county or town requests the discontinuance the Commission, or a representative thereof, shall hold a hearing . . . to ascertain whether or not such road . . . should be discontinued." From this, the plaintiffs argue that since the Board of Supervisors of Loudoun County requested the discontinuance in this case, the State Highway Commission was required to hold a hearing and since it did not, the discontinuance is invalid.

We cannot, by any stretch of grammar, reason, or logic, adopt the construction of the statute suggested by the plaintiffs. Under that construction, if the State Highway Commission, upon its own motion, desires to discontinue a road, it would have to give notice to the local governing body but would not be required to hold a hearing, no matter how strong might be the objection of the local body. On the other hand, if the local body petitions for the discontinuance, the Commission would be required to hold a hearing, despite the fact that no objection exists.

Clearly, the legislature intended no such odd result to flow from its enactment of the statute. There can be no doubt that the legislature meant that a hearing, to ascertain whether a secondary road should

be discontinued, is required only if such a hearing is requested by the local governing body.

There are, then, no provisions in the statute which would have required that notice and hearing be provided the plaintiffs in the discontinuance of Route 740. Nor did the circumstances under which the road was discontinued invoke those requirements for notice and hearing which are, in fact, found in the statute. So far as the statutory procedure is concerned, therefore, the road was properly discontinued.

■ But, next contend the plaintiffs, if the statute is interpreted so as not to require notice to and a hearing for interested landowners, it is unconstitutional because "it permits the State to terminate appellants' property rights without due process of law." The property right which the plaintiffs say they are entitled to have protected is the "continued existence of Route #740."

The fatal flaw in this contention of the plaintiffs stems from a false premise set forth in their brief. There it is stated that "the effect of appellee's discontinuance of the road has been a deprivation of access to appellants' land." That is not the effect of the action of the State Highway Commission in this case. We are dealing with the discontinuance, and not the abandonment, of a public road. There is, today, in this Commonwealth a distinct and vital difference between discontinuance and abandonment. An examination of the applicable statutes will demonstrate that difference and show why the plaintiffs have suffered no deprivation of access to their land.

Article 6.2 of Title 33 of the Code (§§ 33-76.7 to 33-76.12) deals with the abandonment and discontinuance of roads in the secondary system of highways.

Code, § 33-76.7, the statute with which we are mainly concerned, authorizes the discontinuance by the State Highway Commission of any road "in the secondary system as a part thereof in any case in which the Commission deems such road . . . not required for public convenience." Special notice should be given the key words, "as a part thereof." The last sentence of the Code section contains this crucial language: "The jurisdiction and procedure for abandonment of roads discontinued as parts of the secondary system in accordance with this article shall remain in the local road authorities."

Code, § 33-76.8 provides for the abandonment by the local governing body of any road deemed "no longer necessary for the uses of the secondary system of highways." Specific provisions for notice and

hearing are set forth. It is interesting to note, however, that even in the case of abandonment, a hearing is required only if petitioned for by a landowner or the State Highway Commission.

Code, § 33-76.9 grants an appeal to the circuit court from the action of the local governing body in abandoning a road. The Code section provides that if it appears that by the abandonment any party to the appeal would be deprived of access to a public road, the court "may enter such orders as seem to it just and proper for keeping open such section of road . . . for the benefit of such party or parties as would by such abandonment be deprived of access to a public road."

Code, § 33-76.10 states that the effect of an abandonment of a road under Article 6.2 is that such road "shall not remain a public road."

Code, § 33-76.12 provides for the abandonment, without notice or hearing, of a secondary road which has been altered and replaced by a new road "which serves the same citizens as the old road."

In addition to those statutes, Article 6.1 of Title 33 of the Code (§§ 33-76.1 to 33-76.6) relates to the abandonment and discontinuance of roads in the state primary highway system. We will not discuss this article at length except to say that the requirements and procedures to be followed by the State Highway Commission in dealing with portions of the primary system basically parallel those to be followed by the local governing bodies in dealing with secondary roads. One illuminating statement is found. Code, § 33-76.1 authorizes the discontinuance of a road in the primary system by the Commissioner, with the approval of the Commission, without notice or hearing of any kind. The Code section provides, significantly, that such a discontinuance "shall not operate as an abandonment of such road as a public road."

Additionally, Article 6.3 of Title 33 of the Code (§§ 33-76.13 to 33-76.24) authorizes the abandonment of roads not in the state primary or secondary system. Provisions are made for notice and, upon the request of a landowner, for hearing. Code, § 33-76.20 states that the effect of such an abandonment is that the road "shall cease to be a public road." An appeal is provided for and, once more, the legislature cautions against permitting an abandonment if its effect is to deprive any party of access to a public road.

The statutes which we have mentioned were enacted by the legislature in 1950, in a sweeping revision of the then-existing statutes relating to the discontinuance and abandonment of roads. What we may have said about the effect of a discontinuance in cases decided

under the earlier statutes must, of necessity, be modified to the extent that the new statutes require. It will serve no purpose, therefore, to refer to those cases.

In order to hold that the discontinuance of a road has the effect of terminating it as a public way, as the plaintiffs claim, we would have to say that discontinuance and abandonment are synonymous under the statutes. That simply cannot be done. In language which we find to be entirely clear, contrary to the plaintiffs' claim that it is vague and ambiguous, the legislature has said that discontinuance and abandonment are just not the same thing.

So far as the statutes are concerned, only if a road is abandoned under the procedures set forth therefor does it cease to be a public road. Knowing and having stated that to be the effect of an abandonment, the legislature has painstakingly provided for notice, hearing, and appeal to safeguard the rights of landowners who might be cut off from access to a public road by an abandonment, whether such public road be in the primary system, in the secondary system, or in neither.

On the other hand, the legislature, having provided full and complete protection to landowners against the effect of an abandonment, has set up a simple method for the discontinuance of a road, intending that discontinuance should not carry the same effect as abandonment. In enacting the discontinuance statute, the legislature knew of the special interest of the local governing bodies in the secondary highways in their respective jurisdictions and of their knowledge of local conditions. The legislature sought to protect the interests of the local governing bodies in the case of a discontinuance initiated by the State Highway Commission, providing for notice to the local body, for a hearing when requested by the latter, and for an appeal when the local body feels itself aggrieved by the Commission's action.

We are of opinion that under the present statutes the discontinuance of a secondary road means merely that it is removed from the state secondary road system. Discontinuance of a road is a determination only that it no longer serves public convenience warranting its maintenance at public expense. The effect of discontinuance upon a road is not to eliminate it as a public road or to render it unavailable for public use.

We hold, therefore, that the road in question is still a public road, available for use by the plaintiffs for access to their property.

The plaintiffs say, however, that such a holding does not solve

their problem. They contend that they "have the right to continued maintenance of Route 740 in at least a travellable condition, or in the alternative, to have an award of compensation for the damage to their land due to the refusal of the State to maintain the road in question."

The plaintiffs cite to us cases from other jurisdictions in support of their contention. Those cases are of no help to us in deciding what are the plaintiffs' rights and the defendant's duties under the Constitution and statutes of this Commonwealth because they involve different factual situations, different statutes, and different constitutional provisions.

In this Commonwealth, the legislature has supreme powers to open, improve, repair, discontinue, or abandon public highways. Constitution of Virginia, § 63; *City of Lynchburg* v. *Peters*, 145 Va. 1, 9, 133 S. E. 674. Practical necessity requires that the administration of those powers be delegated to appropriate subordinate officials, and this the legislature has done.

Code, § 33-13 provides, in part, that except for such powers as are conferred by law upon the State Highway Commission, "the State Highway Commissioner shall have plenary powers for constructing, improving and maintaining the roads embraced in the State Highway System and the secondary system of State highways."

Code, § 33-46 provides, in part, that "the control, supervision, management and jurisdiction over the secondary system of State highways shall be vested in the Department of Highways and the maintenance and improvement, including construction and reconstruction, of such secondary system of State highways shall be by the State under the supervision of the State Highway Commissioner."

Thus, the legislature has delegated broad powers to the highway officials of this state and has vested them with wide discretion in the discharge of their duties with respect to the construction, improvement, and maintenance of highways. So too with the power delegated to the State Highway Commission to discontinue a secondary road, that is, to determine that it should no longer be maintained at public expense. We said in *Tiller* v. *Railway Company*, 201 Va. 222, 230, 110 S. E. 2d 209:

"The State Highway Commission is given broad powers in discontinuing and abandoning secondary roads. . . ."

The pretended right of the plaintiffs to the continued maintenance of State Route 740 rests, then, in the sound discretion of the highway officials of this state who, when exercising such discretion, act

in a legislative, and not in a judicial, capacity. Since the existence of the alleged right depends upon the exercise of that discretion in such a capacity, it is not of such a nature as would entitle the landowner to notice and hearing, if not required by statute, when action is taken with respect thereto. Nor is the asserted right of such a nature that it can be damaged in the constitutional sense so that the owner would be entitled to compensation therefor.

What the plaintiffs, in reality, seek to have the court do is to order the expenditure by the defendant from the public treasury of the sums necessary to repair former Route 740. But the court is not free to do that in the face of the plenary powers held by the defendant and of the action of the Highway Commission in discontinuing the road. We said in *Hiner v. Wenger*, 197 Va. 869, 874, 91 S. E. 2d 637:

> "The resolution of the Board and the letter of the Highway Commissioner heretofore quoted removing that portion of the road in question from the secondary road system of Augusta county are conclusive upon the court that no public necessity exists for the expenditure of any public funds for its repair and maintenance."

Finally, we must advert to a corollary contention made by the plaintiffs that there was "arbitrary, capricious and collusive conduct by and between the appellee and the Board of Supervisors" which "lends emphasis to the need for a hearing . . . with due notice."

We have carefully reviewed the record and summarily reject this contention by saying that there is no evidence of such arbitrary, capricious, and collusive conduct in this case.

We conclude that the defendant's motion to dismiss the plaintiffs' motion for declaratory judgment was properly granted by the trial court. Its action in doing so will be

*Affirmed.*