**A. A. WEBER, Appellant,**

v.

**MISSOURI STATE HIGHWAY COMMIS-SION, Canon Drainage District, Holt County, Missouri, County Court of Holt County, Missouri, and Fortescue Special Road District, Respondents.**

**No. WD 32055.**

Missouri Court of Appeals, Western District.

Dec. 8, 1981.

Harry P. Thomson, Jr., Dennis D. Palmer, Jennifer A. Gille, Kansas City, for appellant.

Bruce A. Ring, Chief Counsel, Dennis J. Redel, Asst. Counsel, Jefferson City, for respondents.

Before TURNAGE, P. J., and PRITCH-ARD and CLARK, JJ.

TURNAGE, Presiding Judge.

A. A. Weber filed suit against the State Highway Commission, Holt County, the Canon Drainage District and Fortescue Special Road District. Count I requested the court to order the State Highway Commission to repair Route J–111 and resume control and maintenance of that road. Count IV sought a declaration that regulations adopted by Holt County pursuant to

§ 231.441, RSMo 1978, for the expenditure of funds received under the County Aid Road Trust Fund (CART) were invalid. The court entered judgment against Weber on all counts. The other counts are not involved on this appeal.

On this appeal Weber contends the Commission abused its discretion when it agreed to transfer Route J–111 to Holt County and the Road District because the Commission knew the bridges on that route would be damaged by the Drainage District's plan of reclamation. It is further contended that the Commission knew that Holt County and the Road District would be unwilling and unable to maintain Route J–111 as an asphalt road. This court would affirm the judgment in favor of the Commission, but because the appeal involving Holt County and the regulations under § 231.441 is within the jurisdiction of the Supreme Court, this cause is transferred to the Supreme Court.

There is no dispute as to the essential facts. Part of the 1700 acres that Weber owns in Holt County adjoins and is served by Route J–111. Route J–111 is an asphalt road running from Forest City approximately five miles west and then turns north for about three and one-half miles. There are five bridges on this route, designated as T–1 through T–5. T–1 is the bridge farthest west from Forest City, and T–5 is the bridge closest to that city. The Commission maintained Route J–111 as a part of the State Highway system from the 1930's until 1972, except that bridge T–5 was released to Holt County in 1968.

In 1966 the Canon Drainage District adopted a plan of reclamation which was presented to the circuit court of Holt County and thereafter approved. The evidence reveals that all parties concerned, including the Commission, the Drainage District, the Road District and Holt County, agreed that the planned reclamation would likely damage bridge T–1. In fact, it seems to have been agreed that bridge T–1 was in bad shape before the danger from the reclamation plan was considered. It had been damaged and was repaired by the Commission in the early 1960's and thereafter the Commission had received recommendations that it be replaced.

In 1966 the Drainage District petitioned the Commission for relief from replacing bridge T–1, but this was denied by the Commission. During the hearing on this petition, the engineer for the Drainage District suggested that if Route J–111 could be abandoned by the Commission that would alleviate the Drainage District's problem. In 1968 the Commission approved the replacement of bridge T–5, but at standards below that required by the Commission for state highways.

In 1967 the district engineer of the Commission advised the Commission that because of the proposed drainage district work it would be necessary to reconstruct bridges T–5 and T–1 and that an agreement should be made that Route J–111 be transferred upon the completion of a new Route E–159. In October, 1967, the Commission executed a written agreement by which it agreed to transfer Route J–111 with bridges T–1 through T–5 to Holt County and the Fortescue Special Road District after completion of Route E–159. The Commission made no attempt to determine if the County or the Road District was financially able to maintain J–111. Route E–159 was completed in November, 1972, and the Road District accepted responsibility for J–111. Since the Commission relinquished control of J–111 there has not been any maintenance performed and the road has become filled with potholes and bridge T–1 is still in danger of collapse. Weber has sought unsuccessfully to have the Commission agree to resume maintenance and control of J–111 and failing that, filed this suit.

Weber contends the court erred in finding in favor of the Commission because the facts show the Commission abused its discretion in relinquishing control of J–111 when it knew the Drainage District plan would endanger bridge T–1 and when it knew the County and the Road District would be unwilling and unable to maintain J–111 as an asphalt road.

In *State ex rel. State Highway Commission v. Elliott*, 326 S.W.2d 745, 750[2, 3] (Mo. banc 1959) the court held that in the absence of a pleading of facts showing bad faith or manifest abuse of the authority vested in the Commission, the courts have no power to interfere with the constitutional and statutory powers expressly and exclusively conferred upon the Commission for the location and design of the state highway system and the apportionment and expenditure of highway funds.

■ Weber does not argue that the Commission acted in bad faith or manifestly abused the authority vested in it. Rather, the contention is that Weber had a state maintained asphalt road serving his property and he desires to have the state continue to maintain that road despite the decision of the Commission to relocate through traffic from J–111 to E–159. The most that can be said is that the Commission decided to cease maintaining J–111 when it knew that the Drainage District's plan of reclamation might further damage bridge T–1. However, a decision to relocate through traffic and cease maintenance with that knowledge does not constitute a manifest abuse of authority nor show the existence of bad faith. Nor would the lack of knowledge of whether or not Holt County or the Road District could maintain the road after the State relocated through traffic constitute bad faith or abuse of authority. It is apparent that Weber is trying to force the State Highway Commission to continue J–111 as a part of the State highway system and thereby require it to expend funds to maintain such road and replace bridge T–1. For the courts to require the Commission to do this would be judicial usurpation of the exclusive legislative function clearly vested in the Commission by the constitution and statutes. *Elliott* at 750.

A similar situation existed in *Ord v. Fugate*, 207 Va. 752, 152 S.E.2d 54, 60[6] (1967) when the court stated:

"What the plaintiffs, in reality, seek to have the court do is to order the expenditure by the defendant from the public treasury of the sums necessary to repair former Route 740. But the court is not free to do that in the face of the plenary powers held by the defendant and of the action of the Highway Commission in discontinuing the road."

The court was correct in entering judgment in favor of the Commission absent facts showing bad faith or a manifest abuse of authority.

■ Weber, in Count IV of his petition, alleged that Holt County had adopted regulations pursuant to § 231.441 governing the expenditure of CART funds. The allegation and proof was that Holt County would expend CART funds only when the landowners would pay 50% of the cost of the repair or maintenance of county roads. If the landowners did not pay the 50%, then the county would refuse to expend any CART funds on that particular road. On this appeal, Weber urges that this regulation exceeds the authority vested in the county court by § 231.441 and further contends that this regulation violates the equal protection clause of the Missouri Constitution.

In *Regal Tinneys Grove Special Road District of Ray County v. Fields*, 552 S.W.2d 719 (Mo. banc 1977) it was held that questions involving regulations adopted by the county court under § 231.441 involve the construction of the revenue laws and under Article V, Section 3 of the Missouri Constitution, the exclusive jurisdiction to construe the revenue laws is vested in the Supreme Court. The appeal on Count IV involves the regulation adopted under that same section, and thus the exclusive jurisdiction of this appeal is vested in the Supreme Court. It is ordered that this appeal be transferred to the Supreme Court.

All concur.