**BOARD OF SUPERVISORS OF ALBEMARLE COUNTY, Plaintiff,**

v.

**Edward H. RIPPER, and Phyllis O. Ripper, Defendants,**

v.

**NATIONAL PARK SERVICE, UNITED STATES DEPARTMENT OF INTERIOR, Cross–Claim Defendant.**

**Civ. A. No. 90–0019–C.**

United States District Court, W.D. Virginia, Charlottesville Division.

Jan. 15, 1992.

---

George R. St. John, County Atty. for Albemarle County, Charlottesville, Va., for plaintiff.

Frederick W. Payne, Charlottesville, Va., for defendants.

Joseph W.H. Mott, Asst. U.S. Atty., Roanoke, Va., for cross-claim defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter comes before the Court on Plaintiff's motion for summary judgment. In 1989, the Defendants, Edward and Phyl-lis Ripper (the Rippers) purchased a farm in the extreme northwest of Albemarle County in an area known as Brown's Cove. The back portion of the farm abuts the Shenandoah National Park (the Park). Route 629, which intersects with Rt. 624 at the front of the property, passes through the Rippers' property for about a mile before state maintenance ends, and continues in an unmaintained condition up to and through the Park.[1] The issue dispositive of this motion (and of the case) is whether the unmaintained portion of the state road that traverses the Rippers' land has been abandoned by a public authority with abandonment jurisdiction, thereby extinguishing the public right of way.

The Ripper's attorney at the time of their purchase assured them they had perfect title to the property, free of any right of way by virtue of the old road. The Rippers installed a gate across the road at the point at which state maintenance ends and subsequently petitioned the County of Albemarle (the County) to abandon the maintained portion of Rt. 629 that traverses their property. The County reviewed the matter and concluded that the old road, beyond the end of state maintenance, might still be public and that the road could provide a useful access to the Park. The County denied the petition and instructed its attorney to file a bill of injunction against the Rippers commanding the removal of their gate across the road.

The Rippers filed a counterclaim against the County and joined the National Park Service (the Park Service) as a cross-claim defendant. With respect to the County, the Rippers seek an injunction against it from interfering with their rights in the land either by representing it as a public road or by encouraging trespassing thereon. They further seek damages for the County's alleged taking of their land. With respect to the Park Service, which has also maintained for many years a gate across the road at the Park's boundary, the Rippers seek permanently to enjoin it from using the road without their permission,

---

1. Route 629 was once a toll road that crossed the mountains from Albemarle to Rockingham County. It was built in 1800 and is known historically as Brown's Gap Turnpike.

and from representing the road as a public road and encouraging the public to trespass thereon.

The Park Service removed the case to this Court, and filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R.Civ.Proc. The Park Service also claims that the allegations of the Third–Party Complaint establish a prescriptive easement and an actual right of way across the Rippers' land, and deny that any factual allegations establish an abandonment of such easement.

The parties agree that the decisive issue in this case is whether the segment of road in question—that between the end of state maintenance and the beginning of the Park—has been abandoned as a public road. This question has led the parties to engage in a careful review of superceded state codes, old maps, and Virginia Highway Department documents dating back to the 1920s and 1930s, when the Commonwealth conveyed the lands that now constitute the Shenandoah National Park to the United States.[2] That conveyance led the Commonwealth to "eliminate" that portion of Rt. 629 that crossed the new federal park. *See* Letter from Gose to Mullen of June 20, 1936. It is the import of the word "eliminate" that the Court must determine in order to decide this motion.

The County contends that as a matter of law, the Highway Department had no power to abandon Rt. 629 or any other secondary road. Moreover, it argues as a matter of fact, that the County never intended or acted to abandon the portion of Rt. 629 that crosses the Rippers' land.

The Rippers disagree with both points. They respond first that the Highway Department shared with local authorities the power to abandon secondary roads. They rely for this proposition on § 7 of the Byrd

Secondary Highway Act of 1932. Under that section, either the Highway Department, or at its behest a county, could condemn land for new secondary highways. *See* Va.Code Ann. tit. 18, § 1975nn (1936). The implication the Rippers wish the Court to draw is that the power of abandonment should be construed *in pari materia* with § 7, and therefore the Highway Department also shared abandonment jurisdiction with local authorities.

The Rippers also contend that under pre–1950 superceded editions of the Virginia Code, the words "discontinue" and "abandon" were interchangeable for purposes of abandoning a road altogether as a public road. *See Bond v. Green,* 189 Va. 23, 32, 52 S.E.2d 169 (1949) ("when a highway is *discontinued or abandoned,* the land used for that purpose immediately becomes discharged of the servitude") (emphasis supplied). Thus, the Rippers argue that 1936 Highway Department correspondence using the word "eliminate" with respect to roads around the new Park, similarly suggests an intent to abandon Rt. 629 causing the road to revert back to the holder in fee of the land.

■ The Court must disagree with both propositions. First, the Ripper's argument that the abandonment provisions of the 1936 code should be read *in pari materia* with the eminent domain provisions is fundamentally flawed. Although the Byrd Secondary Highway Act of 1932 transferred to the Highway Department most of the local authorities' powers over the newly created secondary highways,[3] there was one crucial exception:

> The jurisdiction and procedure for abandonment of roads in the secondary system of State highways, shall remain in

---

**2.** Defendants have asserted a need for further discovery only if summary judgment is not granted against them. The parties, with the concurrence of the Court, determined that such additional discovery should, in the interest of judicial economy, be deferred. The parties have also agreed that all discovery necessary to present this motion has been completed. The Court has agreed to accept their vouched-for but uncertified documentary evidence.

**3.** In 1930, Virginia's roads were divided into the state highway system and county roads. *See* Va.Code Ann. tit. 18, chs. 83–84 (1930). The Byrd Secondary Highway Act of 1932 caused a third, intermediate category of roads, the secondary system of highways, to be created. *See* 1932 Va. Acts 872.

the local road authorities as now provided by law.

. . . .

*Id.* § 1975*oo.* Section 1975*oo* leads the Court to conclude that the Highway Department did not possess statutory authority to abandon Rt. 629. To accept the Ripper's *in pari materia* argument would require the Court to reject the plain language of the 1936 Code.

Instead of abandoning the road, when the Highway Department "eliminated" a portion of it outside of the Park, it simply dropped it from the secondary highway system. Under the law of the 1930s, that occurrence should not have affected the status of Rt. 629 as a public road:

> In case of the abandonment of any section of any road or any railroad crossing under the provisions of this act as a part of the State highway system, such section of road or such crossing, shall remain a public road ... unless abandoned or discontinued as such under the provisions of this act. . . .

*Id.* § 1975t.[4] Even if the Rippers correctly contend that in the 1930s "abandon" and "discontinue" were used interchangeably, such usage would not have provided a legal basis for deeming a road abandoned where no formal abandonment procedures had taken place pursuant to former § 2039(9).

Under current Virginia law, Rt. 629 road must be considered "discontinued" as distinguished from abandoned. *Compare* Va. Code Ann. § 33.1–144 (1990 Repl.) *with id.* § 33.1–146, *see also Ord v. Fugate,* 207 Va. 752, 152 S.E.2d 54 (1967). The *Ord* case held that under the 1950 revisions to the Viginia Code,

> the discontinuance of a secondary road means merely that it is removed from the state secondary road system. Discontinuance of a road is a determination only

that it no longer serves public convenience warranting its maintenance at public expense. The effect of discontinuance upon a road is not to eliminate it as a public road or to render it unavailable for public use.

*Id.* at 758, 152 S.E.2d 54.[5] Thus, the "eliminated" portion of Rt. 629 was in 1936 simply reduced to the status of a county road—over which the County of Albemarle had exclusive jurisdiction.

The issue now becomes whether the County exercised its authority to abandon the discontinued portion of Rt. 629. Under the 1930 and 1936 codes, the code required the following procedures to be followed in abandonment cases involving county roads:

> Any person may apply to have a county road or landing discontinued, after posting notice of the intended application on the first day of a term of the circuit court at the front door of the courthouse of the county, and at two public places in the neighborhood. After said notice has been published for at least twenty days, the board of supervisors, at their next meeting, shall appoint not less than three nor more than five viewers to view such road or landing, and report in writing whether, in their opinion any, and if any, what inconvenience would result from discontinuing the same. Upon the said report and other evidence, if any, and after the land proprietors along the road proposed to be discontinued have been notified, the board of supervisors may discontinue such road or landing, taking care in every case of an established post road not to discontinue the same until another has been substituted.

Va.Code Ann. § 2039(9) (1930, 1936). No evidence has been presented by the Rippers to suggest that any such procedure was

---

**4.** Although this statutory language was in place prior to the enactment of the Byrd Secondary Highway Act, and originally referred only to primary highways, the Court is persuaded that the General Assembly intended in 1932 that this provision would apply to both primary and newly-designated secondary highways.

**5.** It is worth noting that the language used in road closure cases and statutes has changed more noticably than the law it describes. For

example in *Moody v. Lindsey,* 202 Va. 1, 115 S.E.2d 894 (1960), the court held that a 1913 decision of local authorities to move a rail crossing, amounted under the 1904 Code to mere closure of a portion of the road leading to the crossing, which did not indicate an intent to "discontinue" it. *Id.* at 5–6, 115 S.E.2d 894. Of course, that usage is inconsistent with the modern legal meaning of "discontinue" as it was described in the *Ord* case and above.

followed, and therefore no genuine question exists as to the material fact that no official act of abandonment was taken.

Nevertheless, the Rippers argue that the three entities involved in maintaining the road, the Highway Department, the Park Service, and the County of Albemarle have treated the road as abandoned. For example, they point out that the Highway Department has not physically maintained the road, and has posted an "End State Maintenance" sign on it. And they note that the Park Service has obstructed the road with its gate. As for the County, the Rippers argue that in 1937 and 1948, the Board of Supervisors of Albemarle County requested that its congressional delegation introduce a bill to "open and construct" the road.

■ These arguments fail both as matters of law and fact. First, as the Rippers admit, it is well established that mere non-maintenance or non-use is not sufficient to extinguish a road as a public road. *See e.g. Moody v. Lindsey*, 202 Va. 1, 6, 115 S.E.2d 894 (1960) ("[doctrine of] nonuser will not operate to discontinue a legally established highway, unless coupled with affirmative evidence of an intent to abandon"). The County of Albemarle has shown no such intent, and certainly, the Park Service's obstructions cannot prejudice the County's jurisdiction over discontinued sections of the road not located on Park land.

■ Moreover, the Board of Supervisors' resolutions cited by the Rippers fail to support the Rippers' theory that the Supervisors in the 1930s and 1940s considered the road to be abandoned. On November 17, 1937 the Board of Supervisors passed the following resolution:

WE THE BOARD OF COUNTY SUPERVISORS OF THE COUNTY OF ALBEMARLE in session assembled do hereby request our two United States Senators, Honorable Carter Glass and Honorable Harry F. Byrd, and or Representative, Honorable Howard W. Smith, to use their influence with Honorable Arno B. Cammerer, Director of the National Park Service, in bringing about this improve-ment of the Brown's Gap Road within the Shenandoah National Park area.

This indicates with clarity, that the Board of Supervisors considered their portion of the road to retain some potential value to the public—that is, if the National Park Service would repair and maintain the portion in Park land that crossed the mountains into Rockingham County. The second resolution, passed on December 15, 1948 recites:

WHEREAS, the people ... have petitioned ... to have a bill enacted in the next session of Congress to open and construct a road across the Shenandoah National Park, known as the Brown's Gap Turnpike, ... thereby connecting Virginia State Highway No. 629 and No. 230 on the east with No. 629 on the west of the Mountains,

AND WHEREAS, they have requested that this Board endorse the aforesaid project,

NOW, THEREFORE, BE IT RESOLVED by the Board of County Supervisors of Albemarle County, Virginia, that the aforesaid project be and is hereby endorsed.

Again, such an objective would still have been irrational if the Board perceived that it had abandoned the discontinued portion of Rt. 629 that lay within the County's jurisdiction. These resolutions simply cannot be construed to imply an understanding on the part of the County that it had abandoned the discontinued portion of Rt. 629 leading to the Park.

The Rippers have failed to demonstrate as a matter of fact that the County of Albemarle either acted to abandon the road or believed it to be terminated as a right of way. More importantly, mere non-maintenance or non-use of a road does not destroy the public's right of way. Because they have failed to demonstrate a genuine issue of material fact as to whether the road was abandoned, it is appropriate for this Court to grant summary judgment in favor of the County. With respect to the National Park Service's Rule 12(b)(6) motion, the Court's determination that a public road still exists

renders moot any consideration of the issue.

An appropriate Order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day,

### ADJUDGED AND ORDERED

that:

1) Plaintiff Albemarle County's motion for summary judgment shall be, and it hereby is, granted;

2) Defendants Edward H. and Phyllis O. Ripper, shall be, and they hereby are, ordered to remove any gate on their land now obstructing state route 629, and are permanently enjoined from obstructing or interfering in any way with public access and travel over that road;

3) Third–Party Defendant National Park Service's motion to dismiss, having been rendered moot by the granting of the Albemarle County's motion for summary judgment, shall be, and it hereby is, dismissed;

4) This matter shall be, and it hereby is, dismissed and stricken from the docket of this Court.

