## Richmond.

## PETERS & REED v. McWILLIAMS AND OTHERS.

### February 7, 1884.

1. PARTNERS—*Liability inter sese.*—Where one partner receives partnership property for sale and sells same, and fails through no negligence or fraud on his part to collect the price thereof, he is not liable therefor to his co-partners.

2. IDEM—*Liability of new partner for debts of old firm—Onus probandi.* Person admitted into a firm does not *ipso facto* become liable for the firm's debts. Such liability can be created only by special contract— the burden of proving which rests on the alleger thereof.

3. IDEM—*Dissolution.*—Admission of new partner, *ipso facto*, dissolves old firm.

4. APPELLATE COURT—*Jurisdiction.*—Where the amount in controversy exceeds the *minimum* jurisdictional sum, this court hath jurisdiction, though the judgment complained of be not in form, *in solido*, for that amount, but be divided into lesser sums payable to the persons respectively entitled thereto. In form, the judgment is several. In substance, it is *in solido.*

Appeal from decrees of hustings court of Portsmouth city, rendered February 14,.1881, and on April 26, 1881, in a chancery cause wherein John E. McWilliams and Albert Hobday, administrator of John Hobday, deceased, are plaintiffs, and Wm. H. Peters, Washington Reed and Holt Wilson are defendants, instituted to settle partnership accounts.

Opinion states the facts.

*Holliday & Gayle,* for the appellants.

*J. F. Crocker* and *C. W. Murdaugh,*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

Peters and Reed and Holt Wilson were the owners of a brickyard, where they manufactured and sold bricks. On the 1st of January, 1860, John E. McWilliams and John Hobday purchased from them an one-fourth interest in said brickyard and business, and were admitted, to that extent, as partners in the concern, under the style of "The Cedar Grove Brick Manufacturing Company." The said Holt Wilson was chosen as treasurer of the company, and he kept most of the accounts. The business was continued until Norfolk was evacuated in May, 1862, when all abandoned the brickyard and the business, the said William H. Peters and Washington Reed being in the service of the Confederacy from the evacuation of Norfolk as aforesaid, until the close of the war.

In April, 1870, the said McWilliams and the administrator of the said John Hobday, deceased, instituted this suit, praying for a settlement of the accounts of the said business with their co-partners, Peters, Reed & Wilson; and alleging that there would be a balance due them upon such accounting and settlement. There was an order of reference to a commissioner to take and report the proper accounts; and on 31st December, 1880, the commissioner made his report, to which the plaintiffs filed an exception:

" For that the said commissioner has, in Account A, struck out of the account of Peters & Reed the following items:

| | | | | | |
|---|---|---|---|---|---|
| 1861—Dec'r | 14—81,600 bricks, | | - | - | $1,016 20 |
| | Transportation on same, | | - | 131 25 |
| 1862—March | 1—11,000 bricks, | | - | - | 110 00 |
| " | 3—11,500 | " | - | - | 128 00 |
| " | 4—13,600 | " | - | - | 127 40 |
| " | 19—15,000 | " | - | - | 135 00 |

$1,647 85

Whereas the said commissioner ought to have charged the said Peters & Reed with the said items."

This exception the court, by its decree of February 14th, 1881, sustained; and to this ruling the defendants excepted. And they here appeal and set forth the said ruling as error in the decree complained of.

We are of opinion that this assignment of error is well taken, and that the court below erred in sustaining the exception taken by the plaintiffs to the commissioner's report, which exonerated Peters & Reed from accountability for the items aforesaid, aggregating the charge of $1,647.85.

The evidence shows that these bricks were delivered by Peters & Reed upon quartermasters' requisitions, not to the quartermasters in person, but to their subordinates, for the military uses of the Confederate government. They were delivered in the month of March, 1862, except the one item delivered December 14, 1861. As soon as they were thus delivered they were entered as cash on the sale book; but, in fact, notwithstanding the entry so made, they were never collected, and were never paid for by the Confederate government, though frequent but unavailing efforts were made to collect them. In two months after the last delivery of bricks, the evacuation of Norfolk occurred, in May, 1862, and the quartermasters, upon whose peremptory requisitions the bricks had been delivered, were scattered with their various commands, and their receipts, which were necessary vouchers to obtain payment, could not be obtained, nor could any information of them, or response from them to letters addressed to them, be procured.

Peters says, in his deposition, "After the evacuation of Norfolk (by the Confederates), in May, 1862, on one of my visits to Richmond, I made application to the quartermaster-general for the payment of these bills, but in the absence of the necessary vouchers, signed by the quartermas-

ter to whose requisitions they were delivered, payment was refused."

The appellee, McWilliams, concedes, in his deposition, that bricks were sold by Peters & Reed to the Confederate government, and never paid for.

We do not deem it necessary to determine whether Peters & Reed were acting, in the delivery of these bricks, as *factors* for their firm of "The Cedar Grove Brick Manufacturing Company," or as partners having the common property in custody (which last is to be inferred from the fact that they charged and were to receive no compensation for handling them); because it is not shown in this record that the failure to collect payment for the bricks taken by the Confederate government was attributable to their negligence. And upon this point we do not see why McWilliams, Hobday and Wilson had not the same right and obligation to collect this payment from the government as Peters & Reed had.

We think, therefore, that the commissioner was right in not holding Peters & Reed liable to account for this sum of $1,647.85; and that the hustings court erred in overruling the said report in this particular. The next error assigned is the ruling of the court below sustaining the second exception of the plaintiff, the said McWilliams, to the report of the said commissioner—viz: "For that the said commissioner allowed the item of the note of $316.73, in Account C, whereas the commissioner should not have allowed it." This note was given, originally, for indebtedness due by the partnership of Peters, Reed & Wilson, before Hobday and McWilliams were admitted as partners. The contention before the commissioner was, that as Hobday and McWilliams assumed one-fourth of the liabilities and profits when they were admitted as partners, they owed and were chargeable with one-fourth of the said note

for $316.73, which was paid off by Peters, Reed & Wilson. The commissioner did allow this item against the said Hobday and McWilliams; but the court sustained the exception of the plaintiffs, and overruled the commissioner. In this, we think, the court did not err. This claim rests solely on the testimony of Holt Wilson. He says it was connected with the brickyard affairs before Hobday and McWilliams became interested as partners, and that they agreed to assume their share of the then debts. This is positively denied by McWilliams, who says that they took their interests free from the pre-existing debts; that he never heard of this debt until it was mentioned in Wilson's deposition; that he did not assume any liability or debt contracted before he became a partner with Peters, Reed & Wilson; that he " understood the concern was clear of debt when they entered into it." The matter is affirmed by one witness (Holt Wilson), and is positively denied by another (McWilliams). The denial is equal to the affirmation, and the *onus probandi* being upon the party asserting the claim, it must, in the absence of evidence in the record, be taken as not proved. There is no trace of this note in any of the accounts kept by Holt & Wilson; none of the books and accounts show any connection between the old and the new concern.

The introduction of the new partners, McWilliams and Hobday, on the 1st January, 1860, *ipso facto*, dissolved the pre-existing firm of Peters, Reed & Wilson, to which they acceded. See Collyer on Partnerships, p. 151, note; 34th Missouri Reports, *Mudd et als.* v. *Bost et als.*, p. 465.

" A person who is admitted as a partner into an existing firm, does not thereby become liable to the creditors of the firm for anything done before he became a partner." Pollock's Digest of the Law of Partnership, page 27, Article 16

We are of opinion that the hustings court did not err in

sustaining the plaintiffs' second exception to the commissioner's report, as to which the decree complained of must be affirmed. But the said court did err in sustaining the plaintiffs' first exception to the commissioner's report as aforesaid, and in holding William H. Peters and Washington Reed liable to the plaintiffs for the aggregate sum of $1,647.85, for the bricks sold or delivered to the Confederate authorities; and for this error the decree of February 14th, 1881, and April 26th, 1881, appealed from, must be reversed and annulled.

Upon the question of jurisdiction, presented in the argument, and submitted in the last two lines of the printed brief of counsel for the appellees, it is sufficient to say, that the amount in controversy being over $500.00, this court has jurisdiction of this cause.

LACY and RICHARDSON, J's, were of opinion that the decree should be reversed *in toto.*

The decree was as follows:

This day came again the parties, by their counsel, and the court, having maturely considered the transcript of the record of the decrees aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said hustings court did not err in sustaining the plaintiffs' second exception to Commissioner Edwards' report, and holding that the appellee, John E. McWilliams, was not liable for any portion of the note of $316.73, but that said court erred in sustaining the exception of the plaintiffs to Commissioner Edwards' report, and in holding the appellants liable to the plaintiffs for the aggregate sum of sixteen hundred and forty-seven dollars and eighty-five cents, for the bricks sold and delivered to Con-

Decree.

federate authorities. It is, therefore, decreed and ordered, that so much of said decrees as is hereby declared erroneous be reversed and annulled, and the remainder thereof affirmed; and that the appellees, John E. McWilliams, out of his own estate, and Albert Hobday, administrator of John Hobday, dec'd, out of the estate of his intestate, pay to the appellants their costs by them expended in the prosecution of their said appeal and *supersedeas* here; which is ordered to be certified to the said hustings court of the city of Portsmouth.

DECREE REVERSED IN PART AND AFFIRMED IN PART.