# Richmond

## Leta Hiner and Lura D. Hook v. J. Boyd Wenger, Martin L. Wenger and Otto M. Sheetz.

March 7, 1956.

Record No. 4470.

Present, All the Justices.

The opinion states the case.

*George S. Harnsberger* and *C. M. Elder*, for the plaintiffs in error.

*Lyle G. Weller*, for the defendants in error.

HUDGINS, C. J., delivered the opinion of the court.

On July 7, 1954, Leta Hiner and Lura D. Hook filed their petition under Ch. 403, Acts of 1950, p. 726, Code Sec. 33-76.8, with the Board of Supervisors of Augusta county, praying that 0.7 of a mile of public highway, Route 740 "be abandoned altogether as a public road in so far as it passes through the lands" of petitioners. J. B. and M. L. Wenger appeared in opposition to the petition and later Otto M. Sheetz became a party defendant. The Board denied the request and dismissed the petition. On appeal, the Circuit Court of Augusta county entered an order refusing to close the road and dismissed the petition. To review this order petitioners obtained this appeal.

Route 740 was established more than 50 years ago and has been used ever since as a public highway. It leaves the well traveled hard surfaced Route 732 in a northeasterly direction, extends approximately 400 feet across the 125 acre farm of J. B. and M. L. Wenger, crossing Middle River by ford or an old bridge, thence approximately 280 feet across the northwest corner of the 225 acre farm of Otto M. Sheetz into and across the 560 acre farm of Hiner and Hook and across the farm of Dunlap, and thence it extends in a southeasterly direction to its intersection with another main traveled secondary road, Route 742.

A rough map or sketch is hereto attached giving a more comprehensive perspective of the area, including the public road, Middle River, the names of the owners and the boundary lines of their land:

MAP SHOWING LOCATION OF
ROUTE 740 AND ADJACENT PROPERTIES
COMPILED MAINLY FROM COUNTY TAX MAP
APPROX. SCALE 800'≈1"     MARCH 15,1950
W. A. CRAWFORD, S. A. C.

ATTEST: B.A.L JUDGE, Filed: JUL 7 1954

That part of Route 740 in controversy is indicated on the map by two parallel lines, one solid and the other broken. One hundred acres of the Wenger farm lie on both sides of Route 732 and are bounded on the east by Middle River. Approximately 25 acres lie on the east of Route 732 and are bounded on the west by Middle

River. The two tracts abut the river on opposite sides for a distance of about 400 feet. Within this distance Route 740 leaves Route 732 bearing to the east and crosses Middle River by a ford or an old concrete bridge. The ford is 40 feet wide. The normal water level of the river at its deepest point is 1½ to 2 feet. The ford becomes impassable when heavy rains raise the water level to 3 or more feet. The bridge is old and dilapidated. It has not been repaired and no work has been done on it within the past 10 to 15 years. The photographs filed as exhibits show it sags and has large cracks in the sides. Indeed several witnesses testified it is dangerous to use.

On March 21, 1946, the Board of Supervisors adopted the following resolution:

"This day the Road Committee made its recommendations to the Board that 0.7 miles of Secondary road numbered 740 eastwardly from its intersection with Secondary road numbered 732 be abandoned from the State Secondary Road System in Augusta county as it serves only one house that is located at the intersection of roads 740 and 732; and, upon consideration,

"The Board doth, on motion of Theo Alphin, request the State Highway Commission to abandon said section of Secondary road numbered 740 from its Secondary Road System."

On April 5, 1948, the Highway Commissioner, J. A. Anderson, approved the abandonment in the following letter:

"April 5, 1948

"Abandonment to the Secondary System
Augusta County

"Board of Supervisors of Augusta County
Staunton, Virginia

Gentlemen:

As requested in resolution by your Board, the following abandonment to the Secondary System of Augusta County is hereby approved—Effective April 15, 1948:

Resolution
3-21-46

*Abandonment*
Rt. 740 from Int. Rt. 732, 0.7 Miles
east. Length 0.7 miles.

Sincerely yours,
/s/   J. A. Anderson, Commissioner"

■ There was no appeal from this action of the Board and the Highway Commissioner; however, more than six years thereafter petitioners instituted this procedure prescribed by Code Sec. 33-76.8 by filing their petition with the Board of Supervisors of Augusta county praying that the road in question be closed. Code Sec. 33-76.9 gives the losing party before the Board an appeal as a matter of right and provides that "the circuit court shall hear the matter *de novo* with further right of appeal as provided by general law. Upon the hearing of the appeal, the court shall ascertain and by its order determine whether public necessity exists for the continuance of the section of road or the crossing as a public road or crossing, or whether the welfare of the public will be served best by abandoning the section of the road or the said crossing as a public road or crossing and shall enter its order accordingly."

Petitioners contend that the lower court committed reversible error in its failure to state expressly in its order whether a "public necessity" exists to continue that part of Route 740 in controversy. The language of the statute is mandatory. It provides that on appeal from the action of the Board the circuit court "SHALL HEAR the matter *de novo*." This means that the court must hear or try the case on its merits from beginning to end as if no trial or hearing had been held by the Board and without any presumption in favor of the Board's decision. 30 CJS, Eminent Domain, Sec. 372, p. 67. 12 Words and Phrases, Perm. Ed., p. 70.

The trial court did not determine or state in its order, except by inference, whether "public necessity exists for continuance of the section of the road." The order reads as follows:

". . . . . . . . . . . . . . The Court having maturely considered the evidence and argument of counsel and being of the opinion that that portion of Secondary Road 740 passing through the lands of the petitioners should not be closed as a public road, it is accordingly ORDERED that the prayer of the petitioners be denied and their petition be and the same hereby is dismissed."

We need not decide whether this omission would require reversal since a new trial must be had on other grounds, but in proceedings such as this, if public necessity is established, the order of the court should clearly state that fact.

■ Petitioners also contend that the evidence proves conclusively that no public necessity exists for keeping open the 0.7 of a mile of Route 740 as a public road.

The resolution of the Board and the letter of the Highway Commissioner heretofore quoted removing that portion of the road in question from the secondary road system of Augusta county are conclusive upon the court that no public necessity exists for the expenditure of any public funds for its repair and maintenance.

Defendants state in their pleadings they "oppose the abandonment of any portion of said highway because the part to be abandoned is the only means of ingress and egress to their property when the waters of Middle River are too high to cross the ford adjacent thereto."

The road in question is rutty, rocky, in a bad state of repair and getting worse. It is possible, but risky, to drive an automobile over it. The Wengers use the 22 or 25 acres lying on the east of the river for the following purposes: 11 acres for cultivation, 10 acres for grazing, 1 acre for gardening. They keep about 15 head of cattle at a barn on this tract and in winter they cross the river to feed the stock once a day. If the water level is too high they use a boat. The only dwelling affected by the closing of the road is an old tenant house on this acreage which has not been used for the past 10 years. Ordinarily, when the river is not too high, they use the ford in transporting their farming implements, including tractors, trucks, etc. to the 25 acre tract. If the river is impassable, the Wengers and their farm employees have access to the smaller tract by approaching it from the east, using that part of Route 740 in question. They admit that by going 2 miles further and taking 10 more minutes they have easy ingress and egress to the 25 acre tract. James Boyd Wenger was asked "Isn't it a fact that if this road were left open that it would be primarily for your benefit?" A. "Well, I guess so."

Sheetz testified that the northwest corner of his 225 acres was on the west bank of Middle River and that the only other access he had to his property was by a private right of way approximately one mile in length; occasionally he used the road for hauling cedar posts and timber; that it was rarely necessary for him to use the road when the river was high. His opinion was that the closing of the road would lessen the value of his farm and that of adjacent landowners, and that buyers of farm land were willing to pay more for land abutting a public highway than for land off the highway with a private right of way leading to it.

The defendants are abutting landowners on only a part of the road in controversy; they use it infrequently as a means of ingress

and egress to a part of their farm, and then only when the water level of the river rises to 3 feet or more. This occurs some 3 or 4 times a year. They are the only parties interested in keeping the road open.

J. B. Dunlap, whose farm lies on both sides of a part of the road in controversy, testified that the road was in very bad condition, that he was unwilling "to haul" farm machinery over it and that he thought the erection of gates or cattle guards at each end of the road would adequately protect the interests of the parties to this action.

This brings us to the construction of the phrase "public necessity" as used in the statute. "Public" is defined in Webster's New International Dictionary, 2d Ed., as "The general body of mankind, or of a nation, state or community; the people, indefinitely; as the American public . . . ." The same authority defines "necessity" to be "that which is needed." There is no evidence tending to show that the people of the community, other than the three objectors, use the road or derive any benefit from keeping it open.

Judge John A. Buchanan, speaking for the court in *Miller* v. *Town of Pulaski*, 114 Va. 85, 75 S. E. 767, said: "The term 'necessary', says Lewis on Eminent Domain (3d Ed.) p. 1058, 'when applied to a public road, is used in the statutes and judicial decisions, not in the sense of being absolutely indispensable to communications between two points, but with relation to the purposes for which public highways are established, namely, the reasonable accommodation of the traveling public . . .' "

Each of the parties to this litigation is seeking to advance his private interests. Petitioners raise cattle on their farm. They necessarily have to construct and maintain fences. Their object in seeking to have the road closed and abandoned is to avoid the expense of building a pasture fence on each side of it. Defendants seek to keep this section of the road open as a public highway because it will be more convenient for them to use it when the water level in the river is high. It is their opinion that if the road is closed the value of their farms will be reduced. The public or other members of the community have no special interest in the controversy as it is unnecessary for them to use the road. Doubtless this was the controlling reason for the action of the Board and the Highway Commissioner in removing it from the secondary road system of Augusta county.

It was not the legislative intent, however, to deprive interested parties from access to a public highway by abandoning any

part of such road. The pertinent part of the last paragraph of Code Sec. 33-76.9 provides "upon any such appeal, if it shall appear to the court that by the abandonment of such section of road . . . . as a public road . . . . any party to such appeal would be deprived of access to a public road, the court may cause . . . . the governing body . . . . to be made parties to the proceedings . . . and may enter such orders as seem to be just and proper for keeping open such section of road . . . . for the benefit of such party or parties as would by such abandonment be deprived of access to a public road."

Defendants contend that if the section of the road were abandoned and closed they would not at all times have a reasonable access to their lands. When this issue was presented and supported by substantial evidence it was the duty of the trial court to make the Board of Supervisors a party to the proceedings and to enter such order or orders as may have been necessary to afford defendants a reasonable and convenient means of ingress and egress from a public highway to their land, as directed by the statute.

For the reasons stated, the order of the trial court is reversed and the case remanded, with directions to the trial court to make the Board of Supervisors of Augusta County a party to the proceedings and on the rehearing determine whether appellees, or any of them, by an abandonment of the section of the road in question, would be deprived of a reasonable and convenient access from their lands to a public highway, and enter its orders accordingly.

A successful litigant in this court ordinarily is entitled to recover the cost of printing the record, but at least one-third of the printed record in this case consists of matters not pertinent or germane to any of the questions litigated. The printing of matters not germane to the assignments of error has imposed upon the Court the unnecessary burden of reading the same. Amongst others it consists of 5 printed pages of a will devising the land to petitioners, their pleadings and other matters filed with the Board of Supervisors, copies of subpoenas to the various witnesses, returns of the Sheriff thereon etc. This is such a flagrant violation of Rules of Court, Rule 5:1 § 6(e), that the Court is of opinion that the penalty prescribed by the last paragraph of the Rule should be imposed. Therefore, petitioners will be allowed to recover only one-half of the cost of printing the record.

*Reversed and remanded.*