## CIRCUIT COURT OF SURRY COUNTY

Kirby

v.

Town of Claremont

### September 12, 1990

By JUDGE W. PARK LEMMOND, JR.

At issue is the use of a public road, designated as Route T-1206, which begins at its intersection with Routes T-1207 and T-646 in the town of Claremont and proceeds in a westerly direction three-quarters of a mile to a turnaround area at the mouth of Brandon Gut where same empties into Upper Chippokes Creek. Located in the town of Claremont, the road is bounded entirely by land belonging to Kirby.

The essential historic facts were stipulated at the beginning of the trial of these two cases. Kirby filed a Bill of Complaint asking the Court to declare the subject easement extinguished, to enjoin the roadway from being used by the public, and to award damages and costs. Kirby also filed a petition with the Board of Supervisors of Surry County pursuant to § 33.1-151, Code of Virginia, as amended, asking the Board to determine that there was no longer a public necessity existing for the continuance of the subject road or that the public would be best served by abandoning same or both. The Board voted unanimously to table the petition pending the outcome of the aforesaid Bill of Complaint in the circuit court. Pursuant to Section

33.1-152, the Kirbys appealed this petition through the Circuit Court of Surry County.

Kirby filed a Motion to Consolidate the two causes, which was opposed by both Claremont and the Department of Transportation. The motion was granted and the causes were consolidated. The Motion to Dismiss the Department of Transportation as a defendant was denied. A motion by Claremont for a jury trial was denied. A Motion for Summary Judgment by Kirby was denied.

The stipulated facts established that the property now owned by Kirby was owned by Carter in 1951. At that time a roadway, essentially connecting the two same points as the subject "Gut Road" does today, ran in front of and in very close proximity to the manor house of Carter. Claremont claimed rights in this roadway. In order to obviate future use of this road by the public, Carter and Claremont entered into an agreement on July 2, 1951, whereby Carter agreed to build a second road (the current "Gut Road") and convey an easement therein to Claremont in exchange for Claremont giving up any interest in the former road. Carter paid the town $1,500 in lieu of any future liability and responsibility for the maintenance and repair of the "Gut Road," and the town undertook responsibility and liability with respect to the use and maintenance of the "Gut Road."

The agreement also called for Carter's construction of a pier extending from the roadway into Brandon Gut for the use of the residents of Claremont for the purpose of mooring their small fishing boats and as a means of access between such boats and the roadway.

The parties agreed that the easement in the Gut Road would be for public street purposes only, forty feet in width, and the easement would continue for so long as the roadway was used solely for public street or road purposes. Only that portion of land actually occupied by the roadway was to be used.

Pursuant to the agreement, deeds of easement by the respective parties were granted, also in 1951. The deed of easement to Carter from Claremont is not an issue in this litigation. The deed of perpetual easement from Carter to Claremont was to be for public street purposes only, further conditioned by the town of Claremont not using

any portion of the property subject of the easement except that portion that actually constituted the roadway.

In the event of any breach of the conditions contained in the easement, or if Claremont should close or abandon the roadway, the easement was to cease and revert to the fee simple owner. There was no mention of the pier in the deed of easement.

The road and the pier were constructed. Between 1960 and 1963 the State Highway Department accepted into the state secondary road system the subject Gut Road. Carter conveyed the entire tract to the Felician sisters, who later conveyed same to Kirby.

The Court has determined that a public necessity exists for the continuance of the road that is the subject of this litigation, and that the welfare of the public will not be best served by abandoning this road.

The Court further finds that the plaintiff has failed to prove that the town of Claremont is in violation of the terms of the deed of easement, and even if this had been proved, a reversion to the abutting landowner, Kirby, could not occur absent an abandonment of the road pursuant to § 33.1-151 et seq., Code of Virginia, as amended.

### Abandonment

Kirby's purpose in both causes of action was to have the road closed in order to have the quiet enjoyment of fee simple ownership without the inconveniences and vexations associated with a public roadway. Kirby does not argue with the position that the statutory procedure is the only way to have a road abandoned; however, he believes that the roadway should be abandoned because there is no longer a public necessity therefor and that the safety and welfare of the public would be best served by abandoning the road. In addition, of course, Kirby relies upon the second suit calling for an extinguishment of the easement based upon alleged violation of the terms thereof. Both parties cited *Louisa County v. VEPCO*, 213 Va. 407 (1972). This case stands for the proposition that, when a road is abandoned, the fee is presumed to reside in the abutting landowners in the absence of contrary evidence. This has never been an issue in the case at bar. This case also addressed the issue of whether or

not an abandonment of a road constituted an unlawful and unconstitutional taking of property for public benefit without just compensation. This issue will be addressed later.

The Department of Transportation cites *Moody v. Lindsey*, 202 Va. 1 (1960), which stands for the principle that a highway remains such until vacated in the manner prescribed by statute or abandoned by nonuser. Both the *Moody* and *Louisa* cases cited *Bond v. Green*, 189 Va. 23 (1949).

The evidence clearly failed to establish a common law abandonment by nonuser. Kirby puts great emphasis on the fact that the Flying Point Bridge and the pier are nonexistent, and thus, there is no public necessity served by continuing this road in the state secondary system. Kirby cites *Hiner v. Wenger*, 197 Va. 869 (1956), *McIntosh County v. Fisher*, 242 Ga. 66, and *Cohoon v. Roughton*, 1 S.E.2d 362 (N.C. 1939), to support the position that the road should be abandoned because of the deteriorated and/or nonexistence of facilities to which the applicable road provided public access. The *Hiner* case involved an old road which had a dilapidated bridge crossing a river to various farms. The road was in a very poor state of repair, the bridge was dangerous, and it was basically used by only two farm owners. Their alternate access was a ford which was unusable three or four times a year due to high water in the river. The case was between abutting landowners. A key element to this case, not present in the case at bar, is that in *Hiner* the road had previously been abandoned by the highway department. The Supreme Court stated that removing the road from the secondary system was "conclusive upon the Court that no public necessity exists . . . ." Thus the road was held to be abandoned, although the case was remanded upon a narrow issue as to accessibility to a public highway by one of the parties, an issue not relevant in the case at bar.

In the *Cohoon* case, there was a petition for the continued use by the public of a roadway from a highway to a wharf after the State Highway Commission had built a highway to the water's edge without including this roadway. The action was brought by persons living on the road. The evidence showed that the road was in bad repair and was not being maintained by the county, was

covered by high tides, and the wharf to which it led was deteriorated. A new wharf had been constructed. There was no evidence that the road had ever been a public road. In the case at bar, the Gut Road has always been a public road, and it has been properly maintained by the Department of Transportation since they took it into the system.

In the *McIntosh County* case, the Georgia Supreme Court upheld the discretionary act of commissioners in abandoning a road, the commissioners having found that the road had ceased to be used by the public to the extent that no substantial public purpose was being served. This case did not turn on facts, but upon the discretion of the commissioners.

While the cases cited by Kirby are somewhat analogous with regard to dilapidated or nonexistent facilities, it must be borne in mind that in the case at bar, the Flying Point Bridge did not exist when this road was constructed and thus was never intended as a purpose for this road. The deed itself describes the road as leading to the bridge, not over it. With regard to the pier for mooring of the small fishing boats, which was constructed by Carter pursuant to the agreement (but not mentioned in the deed), it should be noted that this pier was to be used by the *residents* of the town of Claremont only. The road itself, however, was a public road from its inception, and thus open to all members of the pubic. Thus, the nonexistence of bridge and pier do not impact the slightest upon the public use of this road as it has been established since the execution of the deed in question.

It should also be noted that the roads in the *Hiner* and *Fisher* cases were found to be dangerous. Kirby's evidence as to the dangerous conditions on the Gut Road were far short of persuasive, reflecting only a bicycle incident during the past forty years. The videotapes of the road taken from motor vehicles traversing same and the counsel agreed-upon view of same by the Court did nothing to enhance Kirby's position that the road was dangerous. It is not an Autobahn; however, it is not the road to Hana either.

See also the case of *Hedges v. County Court*, 581 S.W.2d 73 (Mo. 1979). Although the case appears to have turned upon common law abandonment, it stated that if the road were used at all, it would not be abandoned nor

would it be abandoned because it ended in a cul-de-sac or dead end. Once a road is established as a public road, its use inures to and becomes affected by public interest, and the right to use it cannot be abandoned unless all the public concurs.

It should be noted that the Department of Transportation, a party in the case through its conclusion, had plenty of opportunity to prove or infer a need for abandonment but chose not to do so. To the contrary, the Department of Transportation's evidence was to the effect that the road was being maintained properly.

Kirby sought to show a lack of public necessity by presenting evidence of the following:

1. The road dead ends at Brandon Gut with no public access to the water.

2. That unidentified persons picnic off the roadway.

3. That unidentified persons went sledding on the roadway and built fires off the roadway.

4. That unidentified parties assembled at the cul-de-sac at the end of the road for the purpose of partying.

5. That unidentified persons transported boats over Kirby's land and launched them in Upper Chippokes Creek.

6. That the street was used by unidentified persons merely for the purpose of sightseeing.

7. That unidentified persons littered the area, which litter included indicia of consumption of alcoholic beverages and unidentified activity that might have involved condoms.

8. That unidentified persons trespassed over the land of Kirby to fish in Brandon Gut and Upper Chippokes Creek.

In reviewing case law from several jurisdictions, the Court finds that sledding on the roadway, picnicking (not involving trespass), and sightseeing clearly constitute public street purposes in the context of the Gut Road. There was an abundance of testimony by citizens attesting to the aesthetic beauty of the Gut Road and their habitual use of this road to observe the flora and fauna and other aspects of nature, all of which are visible from the roadway. Kirby contends that these professed pastoral proclivities are but fanciful figments inspired not by a need to commune with nature, but rather by this litigation.

In the *Hiner* case *supra*, the Court explained the term necessary as follows:

> when applied to a pubic road, is used in the statutes and judicial decisions, not in the sense of being absolutely indispensable to communications between two points, but with relation to the purposes for which public highways are established, namely, the reasonable accommodation of the traveling public . . . .

Kirby argues that it is unnecessary for the public to use the Gut Road in that it does not serve to accommodate "the traveling pubic" in the town of Claremont. Kirby misses the point that this road has been open to the general public since its inception, not merely to the residents of Claremont. Additionally, the case law is clear that roads do not have to link any particular places and in fact can end in cul-de-sacs. *See Maples v. Henderson County*, 259 S.W.2d 264 (1953); *Yonker v. Oceana County Road Commission*, 169 N.W.2d 669 (1969); and *State v. Taylor*, 666 S.W.2d 853 (1984).

The *Maples* case involved a road upon which traffic had dwindled to a point that it was used almost exclusively by hunters and fishermen because it ended at a body of water. This was a case of common law abandonment, and the Texas court, in refusing to abandon the road, stated that it was a matter of common knowledge that fishing is one of the most popular and innocent pastimes of our people. Further, the Court stated that a road cannot be considered abandoned by the public because it runs over and comes to an end on private land where it ends at a navigable creek, which is public property. It should be noted in passing, at this point, that it was the burden of the Town of show that Brandon Gut was navigable, and the Town put on no evidence to show same. Kirby, however, put on evidence from which it can be inferred that Brandon Gut at the subject location is not a navigable body of water and hence Kirby owns creek bottom, not merely to low water. It should be noted that the Texas court, in *Maples*, excluded evidence that hunters and perhaps others had destroyed some of the landowner's property located on lands adjacent to the road in question. The court found

that while such misconduct was indeed reprehensible and the landowner's indignation was certainly expectable, such testimony had no bearing on the issue of abandonment, which was the paramount question in the *Maples* case.

The *Yonker* case involved a dedicated road which afforded access to a lake for what the Michigan court termed all purposes consistent with highway uses, including scenic view of lake and dunes. The court held that the scenic view was a reasonable and sufficient objection to the vacating of the road as sought by the property owners on the ground of increasing the quiet for the landowners and eliminating litter problems occasioned by the use of the road. The court further found that it was unnecessary to close the road for purposes of health, welfare, comfort, or safety of the public. As in the case at bar, the road was not a long one, and likewise as in the case at bar, there were allegations that the road constituted danger to the public. The court found the evidence of littering, noise, etc., was essentially no different from that found on other public roads but found that the scenic view of the lake and sand dunes was a significant public purpose and in fact referred to it as a tourist attraction. While the views afforded by the Gut Road would not be broadly categorized as a tourist attraction, such things are relative. Hemingway found great pleasure in the open sea; Thoreau found it in a pond.

In the *Yonker* case, there was access to the water for fishing, swimming, boating, etc., by the public and in the case at bar, there is no such access. The point is, however, that there is sensual access to the total environment, and the Court finds that the evidence presented by the Town is sufficiently convincing as to this access by the senses (sight, hearing, smell). The Court finds the Town's evidence to be sincere and creative of a significant public necessity when the relative span of the Gut Road and the geographics and demographics of this case are considered. This decision is reached despite the admitted fact that Kirby's interest would be served by more quiet, less traffic, less littering, etc. The magnitude of the public use outweighs private interest for privacy, in the context of this case.

Kirby argues that simply ending in a place of scenic beauty is insufficient and notes that in *In Re Cara Avenue, Etc.*, 350 Mich. 283, there was 137 feet of lake frontage, and hence, there was scenic beauty along the road, not just at the end. The Court finds that the analogy is misplaced in that scenic beauty exists on the entire Gut Road, although doubtless more enhanced at its terminus.

### Easement

Kirby seeks to have the easement over which the Gut Road was constructed declared extinguished and declare all rights granted to the town under the agreement and deed and transferred to the Department of Transportation as having ceased and thus determine that all right, title, and interest in the property subject to the easement be reverted to Kirby. The subject agreement between Carter and the Town contains the following language:

> Mr. Carter shall pay to the Town the sum of $1,500, which sum shall be accepted in full discharge of any and all liability and responsibility of Mr. Carter, his heirs, devisees, and assigns, for the maintenance and repair of the roadway, and, in consideration of the payment of said sum, the Town unconditionally undertakes and agrees, from and after the Closing Date, to maintain and repair, from time to time, and to assume all responsibility and liability with respect to the use and maintenance of the roadway
> . . . .

Kirby argues that the uses of the road, referred to earlier in this opinion, constitute a breach of a responsibility and liability for the use of the road undertaken in the subject agreement. Kirby seeks a reversion based upon this alleged breach of the conditions set out in the agreement.

It should be noted that the agreement contains no language of reversion to the fee simple owner. The deed of easement contains this language but does not contain any language about the maintenance and use of the roadway,

nor is such language (contained in the agreement) incorporated by reference in the deed of easement.

With regard to the acts previously set out, which Kirby contends are improper uses of the road, the Court has stated its opinion as to which constituted appropriate public street or road purposes. Those that the Court did not find to be proper uses of the road would constitute trespasses upon Kirby's land. However, an action upon the agreement could not result in a reversion to Kirby because there is no provision for same contained in the agreement. Kirby has other remedies available for enforcement of the terms of the agreement, such as an action for damages, nuisance, etc. It is doubtful that the case at bar is a proper one for damages; however, without deciding that issue, the Court finds from the evidence presented that no amount of damages has been proved. More importantly, the evidence does not prove that the town of Claremont, itself, was the cause of any damage. The evidence does not reveal the identity of those alleged to have committed torts or crimes upon the roadway or upon Kirby's lands.

The fact that acts which constitute tortious or unlawful conduct have occurred on the road or upon Kirby's land adjacent thereto are acts which have been the subject of litigation in other states, in cases some of which have already been cited herein. The respective courts have stated in those opinions that while such conduct may be most vexatious, the remedy is one of law enforcement and/or other remedies at law.

Public roads and streets are used daily by persons committing felonies. Practically all of these roads and streets are situated on public easements. Obviously, public roads and streets cannot be closed merely because they provide a means of transportation for criminals to reach places at which they commit their crimes. This is, of course, a matter of law enforcement, not one of extinguishing easements and closing roads. The capital city of the Commonwealth cannot control this type of "use" of the public roads and streets within its limits. It can hardly be expected that Claremont, or any other city or town, could somehow successfully end the unlawful uses associated with streets and roads.

It should be noted that the receipt of the $1,500 by the Town from Carter was stated to be consideration for the Town's assuming responsibility and liability for the use and maintenance of the roadway, and thus the Court finds that the intent of the parties was merely to obviate any liability or responsibility on the part of Carter or any use or maintenance of the roadway, and there was no reversionary clause in the agreement should the Town, itself, indulge in uses other than those considered to be proper uses of a pubic street or road.

The deed of easement, as stated, contains no language with regard to the use and maintenance of the roadway but does set up a reversionary contingency if either of two conditions was broken, namely:

> Upon the condition, however, that the Town of Claremont will not at any time use any portion of the property above described except for public street purposes; and
> Upon the further condition that the Town of Claremont will not at any time use any portion of the property above described except so much thereof as shall actually lie within the bounds of the roadway . . . .

It must first be remembered that the Commonwealth of Virginia has assumed the responsibilities for this road by taking it into the secondary system. The evidence does not identify the Town of Claremont nor the Virginia Department of Transportation as having used the road for other than public street purposes or for having used any portion of the road that did not actually lie within the bounds of the roadway. The Court fails to see any distinction between the Gut Road and any other public road in that all such public roads are to be used for public road purposes and such purposes are to be conducted only upon the roadway itself, with the obvious exceptions of where the Department of Transportation might provide parking for scenic views, etc.

The Court is of the opinion that an easement vested in the pubic by appropriate dedication may not be lost by the neglect of a governing body or its officials but may be lost only by a legal abandonment under the statutory

procedure. See, in addition to other cases previously cited, *Southern Railway v. Wages*, 203 Ga. 502, 47 S.E.2d 501 (1948). The Gut Road was a public road from its inception. It did not become so only upon being taken into the state system. Until a road is legally abandoned, the landowner's rights are subordinate to the rights of the public, which cannot be determined by the litigation of a private citizen seeking to extinguish the easement over which a public road exists.

To permit such action by a private owner would totally frustrate the statutory procedure for abandonment of roads. If a grantor or a subsequent grantee of land burdened by an easement does have the right to bring an equitable proceeding, then the Court, if it declares that the easement has been extinguished, could be faced with hearing the appeal of the local governing body's decision in a subsequent statutory abandonment procedure involving the same road. If, in appeal of such abandonment proceeding, the Court were to hold that a public necessity existed for keeping the road open, would it be ignoring its earlier decision that the easement had been extinguished if it ruled that an abandonment should be declared? On the other hand, if the Court were to determine that the road should be closed solely because of a prior proceeding that held that the easement had been extinguished, then would it be ignoring its duty under the statutory procedure to ascertain whether the continued existence of the road is a public necessity or whether the public's welfare would be best served by abandoning the road?

In addition to the argument that there were violations of conditions that should result in a reversion, Kirby argues that the easement should be extinguished because of frustration of purpose. Kirby argues that the purpose for which the Gut Road was constructed was to provide access for the residents of the town to the pier which Carter would construct. The Court finds that the construction of the pier was a perk and did not constitute the purpose of the road. The construction of the pier is not mentioned in the deed of easement. Further, the use of the pier by the residents (and it should be noted that this is the only place in either the agreement or the deed of easement that the term "residents," i.e., the residents of the town of Claremont is mentioned) was con-

ditioned to exist as long as the easement granted in the deed continued to exist. The deed of easement created a public road for public purposes, which obviously was not restricted in its use to only the residents of the town of Claremont. Whether Carter intended this in essence as something approaching a gift to the residents of Claremont or whether it was part of the actual consideration for the exchange of easements, it does not bear upon the public use of the Gut Road since the use of the pier was restricted to residents only. A further indication that construction of the pier was not the purpose of the road is that there was no time in which the pier had to be completed.

Thus, Kirby's argument that the purpose of the road was to provide a means of accessing the pier and the bridge is not well-founded, and hence, the demise of the bridge and pier do not frustrate the purpose of the. easement since access for the utilization of the pier and bridge was not a purpose of creating the public road. Kirby places some reliance upon the Department of Transportation documents indicating that at the end of the road there was a "landing." These documents came into existence when the road was taken into the secondary system. The term "landing" appears because in Virginia any road ending at navigable waters results in a presumption that it. is to be used for a "landing." As previously stated, the Town offered no evidence to establish Brandon Gut as a navigable body of water, and the evidence presented by Kirby, at the very least, created a strong inference that it was not navigable. In any event, the utilization of the word "landing" in the DOT documents is not relevant to the issues of this case.

### Unconstitutional Taking

In memoranda, Kirby argues that denying relief in the action for extinguishment of the easement and ruling only upon the abandonment issue would constitute an unconstitutional taking without due process of law. This easement, established between Carter and the town of Claremont, was supported by the concurrent release of all interests, etc., in the former road that ran in front of Carter's home. The agreement contains ample compensation.

Further, the Court finds that even had there been insufficient compensation, the time for establishing same would have been when the road was taken into the secondary system and that this right to compensation was Carter's and not transferable to successors in title.

The Court has ruled on both the abandonment and the easement extinguishment actions; however, even if the Court had taken the position that abandonment was the exclusive remedy and thus ruled only upon this issue, there was no taking. No one has taken anything from Kirby. Kirby owned the fee simple before; he still does. In any event, to seek compensation at this time would be analogous to the inverse condemnation sought in the case of *Prendergast v. Park Authority*, 227 Va. 190 (1984), in which it was held that actions for such by an owner whose property is taken or damaged for public use has a right to waive all other remedies and to sue upon an implied contract that he will be paid such amount as would have been awarded if the property had been condemned under the eminent domain statute. Such an action, based upon implied contract, was held to be subject to a three-year statute of limitations.

### Collateral Matters

Having decided that a public necessity exists for the continuance of the road and that the public welfare would not be served by abandoning this road, and by further finding that the underlying easement should not be extinguished, it is necessary to set out other findings that impact upon the future use of the Gut Road.

The Court finds that the Gut Road does not include the abutment to the now extinct Flying Bridge.

The provision in the agreement for the construction of the pier was for the sole purpose of the residents of the town of Claremont mooring their small fishing boats. The Court finds that if the parties had intended to include fishing from the pier, they would have spelled this out in the agreement. In any event, the pier having long since washed away, any purpose it may have had is gone. The Court further finds that the only access to Brandon Gut at the terminus of the road was by use of this pier which extended from the surface of the roadway into Brandon

Gut. Thus, traversing the land between the roadway and Brandon Gut by the residents would now constitute a trespass.

The Town argued that it had established rights in its residents and/or the public to fish not only in Brandon Gut but in Upper Chippokes Creek by way of prescriptive easement. The issue of easement by prescription for this purpose was not properly before the Court, but the Town would be doomed in any such undertaking to establish such an easement because use of the land between the roadway and Upper Chippokes Creek (or Brandon Gut) was not adverse and hostile for the statutory period, since the evidence showed that this was clearly condoned by the predecessors in title to Kirby, the Felician sisters.

In conclusion, neither the residents of the town of Claremont nor the public at large has any rights to fish in Brandon Gut or Upper Chippokes Creek, since any attempt to do so, even if standing on the roadway (a highly impractical and unlikely event) would constitute a trespass. The Court reiterates the fact that the evidence was satisfactory to establish Kirby's ownership of the creek bed of Brandon Gut, not merely to low water, because it has been shown that the stream is not navigable.

The town can still use the Gut for emergency use for filling the tanker fire truck, although it would appear that there are other far better sources.

### Miscellany

Kirby argues that similar scenic views are available nearby. The public could go elsewhere. That is somewhat like saying we are closing Yellowstone and you can go to Yosemite or Grand Teton. The views are not the same.

The highway was a party to the case to conclusion and had the opportunity to present evidence that the road should be abandoned and chose not do so.

Most, if not all, of the cases cited by Kirby for the proposition that an easement may terminate when the purpose for which it was created can no longer be served were cases that dealt with private easements and thus not particularly helpful.

Evidence regarding highway standards presented by Kirby failed to establish any reason for abandoning the

road, particularly in light of the evidence presented by the Virginia Department of Transportation.