484

ANN K. KIRBY, CO-TRUSTEE, ETC.

V.

TOWN OF CLAREMONT, ET AL.

Record No. 910933

April 17, 1992

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Keenan, JJ.,
and Cochran, Retired Justice

William G. Broaddus (James F. Stuffs; James W. Renney; Mc-Guire, Woods, Battle & Boothe, on briefs); for appellants.

John K. Burke, Jr. (Clinton B. Faison, Jr.; Mays & Valentine, on brief), for appellee Town of Claremont.

Richard L. Waltson, Jr., Senior Assistant Attorney General (Mary Sue Terry, Attorney General; K. Marshall Cook, Deputy

*Attorney General*, on brief), for appellee Commonwealth of Virginia Department of Transportation.

JUSTICE KEENAN delivered the opinion of the Court.

This appeal involves a dispute over the use of a road constructed on an easement granted to the Town of Claremont. Ann K. Kirby, successor to the easement's grantor, primarily asserts that the trial court erred in ruling that (1) pursuant to Code § 33.1-151, a public necessity exists for continuance of the road and that the welfare of the public would not be served best by abandonment of the road; (2) Kirby failed to prove that the Town violated the terms set forth in the Deed of Easement; (3) a reversion of the easement could not occur absent an abandonment of the road pursuant to Code § 33.1-151 *et seq.*; and (4) Flying Point Bridge did not exist in 1951 and, thus, the purpose of the easement has not been extinguished.[1] Asserting cross-error, the Town contends that the trial court erred in ruling that (1) the road does not include the old bridge abutment; and (2) the residents of the Town do not have the right to fish from within the area of the easement.

Prior to 1951, James Walter Carter owned a tract of land, known as Claremont Manor Farm, which is located in the Town of Claremont. A portion of the farm is bisected by a small body of water known as Brandon Gut. Brandon Gut flows into Chippokes Creek, which in turn flows into the James River. Before 1951, a small bridge known as Flying Point Bridge crossed Brandon Gut.

In 1951, Carter and the Town of Claremont negotiated an Agreement (the Agreement) in which Carter agreed to construct a road (the Road) on his property "from Cool Spring Road to the easterly beginning of Flying Point Bridge." Carter also agreed to grant to the Town a 40 foot-wide easement along the Road to be

---

[1] Code § 33.1-151 provides in pertinent part that if

the governing body is satisfied that no public necessity exists for the continuance of the section of the secondary road as a public road, . . . or that the safety and welfare of the public would be served best by abandoning the section of road, . . . it shall enter (i) within four months next after the thirty days during which notice was posted where no petition for a public hearing was filed, or (ii) within four months next after the public hearing an order on its minutes abandoning the section of road as a public road, . . . and thereupon the section of road shall cease to be a public road, . . . or if the governing body be not so satisfied, it shall dismiss the application within the specified four months.

used "for public street purposes only." Additionally, the Agreement provided that "said easement [will] continue only so long as the Roadway, as it may from time to time exist, shall be used solely for public street or road purposes."

Carter conveyed the easement by Deed of Easement (the Deed) in December 1951. The Deed provided that the conveyance was made upon condition that "the Town of Claremont will not at any time use any portion of the property above described except for public street purposes." The Deed also stated that the easement was granted upon the condition that "the Town of Claremont will not at any time use any portion of the property above described except so much thereof as shall actually lie within the bounds of the Roadway." Additionally, the Deed provided that:

In the event that any one or more of the conditions aforesaid shall be broken, or if the Town of Claremont shall close or abandon the Roadway or any part thereof, the said Easement shall cease and determine and all right, title and interest in and to said land shall revert to the grantors herein, their heirs, devisees, or assigns.

In the early 1960's, upon request of the Town, the Road was taken into the secondary system of state highways. In December 1964, Carter conveyed Claremont Manor Farm to the Felician Sisters of Virginia. In September 1976, the Felician Sisters sold the Farm to Ann K. Kirby as co-trustee for her children.

Kirby filed a suit against the Town and the State Department of Transportation alleging that the easement had been extinguished and had reverted to her because the Town breached the conditions outlined in the Agreement and Deed. Kirby also petitioned the Board of Supervisors of Surry County to have the Road abandoned pursuant to Code § 33.1-151, alleging that no public necessity exists for the Road, that the purposes for which the Road was constructed no longer exist, and that the Road presents a danger to public safety and welfare. The Board of Supervisors did not grant the abandonment petition, and Kirby appealed its decision to the trial court pursuant to Code § 33.1-152.[2] The trial

---

[2] Code § 33.1-152 provides in pertinent part that

[t]he circuit court shall decide the appeal based upon the record and upon such other evidence as may be presented by the parties. Upon the hearing of the appeal, the court shall ascertain and by its order determine whether adequate justification

court consolidated the two cases, and it heard testimony on each case in March 1989.

Evidence presented at trial shows that Flying Point Bridge no longer exists. Additionally, Kirby presented evidence that members of the public often picnic and fish from the old bridge abutment at the end of the Road and from the beach nearby. Kirby also presented evidence that members of the public sometimes use the area for drinking and sleigh riding.

The Town presented evidence that members of the public have used the Road and the old bridge abutment for many years for sightseeing, observation of wildlife, and fishing. The evidence further shows that the only accident on the Road involved a bicycle. Additionally, the Town's mayor, Jean Wingfield, testified that she told people that fishing was allowed from the old bridge abutment and from areas outside the Road.

The trial court held that a public necessity exists for the continuance of the Road and that the welfare of the public will not be best served by abandoning the Road. The trial court further held that the Town has not violated the Deed, "and even if this had been proved, a reversion to the abutting landowner, Kirby, could not occur absent an abandonment of the road pursuant to Section 33.1-151."

■ On appeal, Kirby first argues that the trial court erred in ruling under Code § 33.1-152 that a public necessity exists for continuance of the Road and that the welfare of the public would not be served best by abandonment of the Road. Either of these findings by the trial court, if supported by the evidence, is a sufficient basis upon which to uphold the denial of a petition for abandonment under Code § 33.1-152. The rulings of the trial court, based on its factual findings, will be upheld on appeal unless they are plainly wrong or without evidence to support them. *Carter* v. *Carter*, 223 Va. 505, 508-09, 291 S.E.2d 218, 220 (1982).

Kirby contends that sightseeing and recreational purposes are not a sufficient basis to establish a public necessity for continued use of the Road. She emphasizes the fact that the Road does not connect to any other road, facility or property. Further, she notes

exists for the decision of the governing body that public necessity exists for the continuance of the section of road, . . . or that the welfare of the public will be served best by abandoning the section of the road . . . and shall enter its order accordingly.

that Flying Point Bridge, which the Road earlier joined, no longer exists.

Kirby also argues that the trial court erred in finding that the welfare of the public would not be served best by abandonment of the Road. She cites the testimony of her expert witness, T. Howard Noel, a civil engineer, who testified that the narrow width of the Road created a "potential hazard or danger from a traffic safety perspective." Noel also testified that the Road does not meet the present minimum state standards for width, sight distance and slope.

■ In examining Kirby's argument, we begin by considering the meaning of the term "public necessity" as it appears in Code § 33.1-152. As explained by this Court in *Hiner* v. *Wenger*, 197 Va. 869, 91 S.E.2d 637 (1956), the term "necessary" has a distinct meaning in the context of statutes and judicial decisions concerning the use of public roads. We stated that:

"[W]hen applied to a public road, ['necessary'] is used in the statutes and judicial decisions, not in the sense of being absolutely indispensable to communications between two points, but with relation to the purposes for which public highways are established, namely, the reasonable accommodation of the traveling public."

*Id.* at 875, 91 S.E.2d at 641 (quoting *Miller* v. *Pulaski*, 114 Va. 85, 88, 75 S.E. 767, 768 (1912)).

Kirby contends that there is no public necessity for the Road because it ends at a place which has only scenic value to the public. We disagree. First, we recognize, as a matter of law, that scenic value can be sufficient of itself to support a finding of public necessity. *See Yonker* v. *Oceana County Road Commission*, 17 Mich. App. 436, 443-44, 169 N.W.2d 669, 672-73 (1969). *See generally, In re Vacation of Cara Avenue*, 350 Mich. 283, 86 N.W.2d 319 (1957); *State ex rel. Perkins* v. *Taylor*, 666 S.W.2d 853 (Mo. Ct. App. 1984). In reaching this conclusion we adopt the reasoning set forth in *Yonker*, where the court stated:

Would it be logical to assume that it is reasonable to use public funds to purchase areas of natural beauty for parks, to build new roads for access to scenic areas of our county and to construct other facilities for public view and at the same time conclude that it is unreasonable to object to the closing

of an existing road that provides a unique view for the
public?

*Id.* at 444, 169 N.W.2d at 672-73.

■ The uncontroverted evidence in the case before us is that
the Road leads to a place of scenic beauty. Further, 17 Town resi-
dents provided extensive evidence that they and other residents of
the Town regularly use the Road for sightseeing purposes. Evi-
dence showed that Town residents use the Road to view a variety
of wildlife including cranes, beavers, bald eagles, deer and blue
herons. Town residents testified that they enjoyed bringing guests
to see the beautiful view and that they considered this view to be
an asset of the community. We hold that this testimony was suffi-
cient to support the finding of the trial court that there is a public
necessity, that is, a reasonable accommodation of the public,
which will be served by allowing the Road to continue in use.

■ We also hold that there is sufficient evidence to support the
trial court's conclusion that the public welfare would not be served
best by abandonment of the Road. The evidence showed that over
its 38-year existence, there has never been a motor vehicle acci-
dent on the Road. This evidence, combined with the evidence of
the Town residents' use of the Road for access to view scenic
beauty, supports the trial court's conclusion here.

■ Kirby next argues that the trial court erred in finding that
she failed to prove that the Town violated the terms set forth in
the Deed and Agreement. We disagree.[3] Since Kirby was assert-
ing the violation of a condition subsequent set forth in the Deed,
she had the burden of proving that violation. *Trailsend* v. *Va.
Holding Corp.*, 228 Va. 319, 325, 321 S.E.2d 669, 670 (1984). A
condition subsequent set forth in a deed of easement is to be
strictly construed against the grantor and those who claim under
him. *Id.*

---

[3] Since we uphold the finding of the trial court that Kirby did not meet her burden of
proving that the Town violated the terms set forth in the Deed, we need not consider
whether the trial court erred in ruling that a reversion could not occur absent abandonment
of the Road pursuant to Code § 33.1-151. Further, we disagree with Kirby's assertion that
the trial court ruled that her reversionary interest in the easement was terminated. Rather,
the court ruled that her reversionary interest could only be asserted after the Road was
abandoned. However, because we do not address whether a reversion could occur absent
statutory abandonment procedures, we likewise do not reach this subsidiary ruling of the
trial court.

The language in the Deed on which Kirby relies provides that the Town shall not use any portion of the property conveyed except for public street purposes and that such use may only be made within the bounds of the Road. While acknowledging that there was evidence of trespass and other torts or crimes upon the Kirby lands, the trial court ruled that Kirby had not proved a violation of the terms of the easement, because "the evidence does not prove that the town of Claremont, itself, was the cause of any damage."

■ We conclude that the evidence supports the finding of the trial court. There is no evidence of any action by the Town itself which would constitute a violation of the terms of the easement. The fact that several individuals fished from the Road and abutment does not constitute an action by the Town. The statements of the mayor in this case likewise do not constitute an action by the Town, since there is no evidence in the record that her statements were authorized. A mayor may only act within the scope of authority expressly conferred or necessarily implied therefrom. *Hammer v. Commonwealth*, 169 Va. 355, 365, 193 S.E. 496, 500 (1937).

Kirby additionally argues that the trial court erred in finding that the easement was not extinguished due to frustration of purpose. Kirby contends that the purpose of the easement was to provide access to Flying Point Bridge. Since the bridge no longer exists, Kirby argues that the purpose of the easement has been frustrated and that, accordingly, the easement is extinguished. Kirby relies on the language in the Agreement which provides that the new Road will run "to the easterly beginning of Flying Point Bridge." She also points to the evidence presented at trial which shows that the Road ran to the bridge.

■ We find that there is sufficient evidence to support the trial court's conclusion that access to Flying Point Bridge was not the purpose of the easement. A reading of the Deed and Agreement, as a whole, shows that the easement was conveyed for "public street purposes only." Flying Point Bridge is mentioned in the Deed and Agreement simply as a reference point for measuring the easement.

■ In its assignment of cross-error, the Town contends that the trial court erred in ruling that the old bridge abutment is not part of the Road. The Town contends that the plat attached to the

Deed clearly indicates that the abutment is included within the proposed 18-foot road. We agree.

The Deed specifically provides that the easement goes

> to a point opposite northern end of Flying Point Bridge and a distance of twenty-eight (28) feet from the center line of the said Bridge as now located; thence N. 23 degrees 28' W. along the line with the Northern end of the said Flying Point Bridge, a distance of forty (40) feet.

These boundaries are reflected on the plat which is incorporated into the Deed. An examination of the plat reveals that the abutment is included within the measurements of the boundary line for the proposed 18-foot road. Accordingly, we find that the trial court erred in holding that the old bridge abutment is not part of the Road.

■ The Town further contends that the trial court erred in ruling that Town residents have no right to fish from the Road or the abutment. However, the Town presented no evidence to the trial court which would support a ruling to the contrary. Further, we find no evidence in the record which would establish that such a right exists. Accordingly, as the party asserting that such fishing rights exist, the Town cannot now complain that the trial court erred in its resolution of this issue. *Peters & Reed* v. *McWilliams*, 78 Va. 567, 571 (1884).[4]

■ We also find that the evidence supports the trial court's ruling that the Town did not acquire an easement by prescription to fish from the Road or the abutment. Although the record reflects that Town residents have fished from the abutment for many years, there is no evidence that this constituted an adverse use over a 20-year period. *See Martin* v. *Proctor*, 227 Va. 61, 64-65, 313 S.E.2d 659, 661 (1984). Further, there was testimony that the Felician Sisters, who owned the property between 1964 and 1976, specifically permitted fishing from the old bridge abutment.

For these reasons, we will affirm the decree of the trial court.

*Affirmed.*

---

[4] As part of our determination that there is no evidence in the record to establish the right of Town residents to fish from the Road or abutment, we find that the record is insufficient to determine whether Brandon Gut is a navigable body of water.

CHIEF JUSTICE CARRICO, dissenting.

I would hold that there is no public necessity for the continuance of the road in question and that the welfare of the public would be served best by abandoning the road. Code § 33.1-152. Accordingly, I would reverse the judgment of the trial court.